ANTHONY ARDAGH CASSIDY, Indiv. and on Behalf of all Those Underwriters at Lloyd's, London, subscribing to Policy Nos. C256, C257, C258 and C286, Plaintiff-Appellant, v. DEREK BRYANT INSURANCE BROKERS, LTD., *et al.*, Defendants and Counterplaintiffs-Appellees (Quantex Corporation *et al.*, Counterdefendants and Counterplaintiffs; Forum Insurance Company, Counterdefendant).

First District (2nd Division)   No. 1—91—2841

Opinion filed March 16, 1993.

Peterson & Ross, of Chicago (Thomas S. White, Gregory D. Hopp, and Cecilia M. Clarke, of counsel), for appellant.

Wilson, Elser, Moskowitz, Edelman & Dicker, of Chicago (Jerry L. McDowell, Elizabeth M. Budzinski, David M. Holmes, Thomas Wilson, Thomas Hyland, and Thomas Leghorn, of counsel), for appellees.

PRESIDING JUSTICE McCORMICK delivered the opinion of the court:

This case arises from an extraordinarily unsuccessful insurance program for which valid claims are more than twice the total premiums collected. Forum Insurance Company (Forum) issued the insurance; Will Darrah & Associates, Inc. (Darrah), as managing general agent, sold the insurance; and Derek Bryant Insurance Brokers, Ltd. (Derek), procured reinsurance for most of Forum's risk from a group of underwriters acting in syndicates at Lloyd's, London. Each of these four parties sued the other three, and the parties have now settled most of the suits.

Forum assigned its claim against Derek to the underwriters as part of Forum's settlement with the underwriters. The underwriters then amended their complaint to add the assigned claims. The trial

court dismissed the assigned claims, finding that they did not relate back to the underwriters' original complaint or to Forum's original counterclaim and, therefore, they were barred by the statute of limitations. The underwriters appeal from the interlocutory order dismissing the assigned claims.

We affirm in part and reverse in part. First, we must determine the appropriate standard for deciding whether the assigned claims relate back to the date of filing either the original complaint or the original counterclaim. We find that the claims do not relate back to the original complaint, but some of the claims relate back to the counterclaim. We find that some of the claims were barred by the statute of limitations before Forum filed the original counterclaim, so we affirm dismissal of those claims. We reverse dismissal of the claims which relate back to the original counterclaim and which were not time-barred when Forum filed that counterclaim.

Although Forum had no prior experience underwriting or managing programs of commercial vehicle insurance, in 1981 it agreed to insure truckers and other owners of commercial vehicles. Darrah wrote the insurance and handled the claims in exchange for a commission based on the amount of premiums collected. Although Forum issued the policies and, therefore, was liable for the policy risk, Forum retained little of the risk because it obtained reinsurance. Derek and its American affiliate, Derek Bryant Associates, Inc. (collectively, Bryants), obtained reinsurance for Forum's risk first from Anthony Ardagh Cassidy, active underwriter for a Lloyd's, London, syndicate. With Cassidy acting as lead underwriter, Bryants obtained reinsurance for percentages of Forum's risk from other Lloyd's syndicates in exchange for percentages of the premiums paid on the policies.

After Forum obtained further reinsurance outside of Lloyd's for the first year of the program, which ran from September 15, 1981, to September 30, 1982, Forum bore none of the risk of loss between $0 and $25,000 on each policy, and only 12.5% of the risk of loss between $25,000 and $350,000. The underwriters in the Lloyd's syndicates bore 87.5% of the risk of loss from $0 to $350,000. As Forum retained only a small part of the risk, it claimed only a small percentage of the premiums.

In October 1982, Bryants obtained reinsurance for the second contract year of the program, from October 1, 1982, to September 30, 1983, on essentially the same terms as those applicable to the first year. Darrah sold a large number of policies to many different concerns. In October 1983, Bryants again obtained reinsurance for Forum's risks in the third contract year of the program, ending Septem-

ber 30, 1984, but only a few of the underwriters who participated in the first two years agreed to participate in the third year. The underwriters who continued to participate agreed with Bryants to "premium income limits" so that the program would limit sales of new insurance and thereby limit risks.

The remaining underwriters, displeased with results from the first three years of the program, sought to reduce their participation in the program. For contract year four, which the parties shortened to run from October 1, 1984, to December 31, 1984, the underwriters bore only 22.5% of the policy risk of loss between $0 and $350,000. Forum obtained other reinsurance, but increased its share to 21% of the risk from $0 to $350,000. The underwriters did not participate at all in the fifth and final contract year of the program, which was calendar year 1985. Forum retained 40% of the risk of loss from $0 to $350,000 on each policy written that year. Total losses on all policies written during the five years of the program have exceeded $50 million.

In May 1987 Cassidy, on behalf of the underwriters, sued Forum, Darrah and Bryants. In an earlier interlocutory appeal, this court found that Cassidy, as lead underwriter for the program, had authority to bring suit in his own name on behalf of all underwriters in the Lloyd's syndicates that subscribed to the program. *Cassidy v. Forum Insurance Co.* (1990), 204 Ill. App. 3d 196, 561 N.E.2d 1167.

Cassidy alleged that Darrah, Forum and Bryants negligently, and in breach of their fiduciary duties to the underwriters, failed to collect and send timely and accurate information concerning insurance losses throughout the duration of the program. The underwriters relied on the inaccurate information in the reports they received from Bryants when they decided to renew the reinsurance, to their substantial detriment. According to the underwriters' contract with Forum, Bryants were intermediaries of the reinsurance contract, and as such, all communications relating to the program were to be transmitted through Bryants. Cassidy further claimed in his original complaint that Darrah and Forum breached their reinsurance contracts for the third and fourth years of the program, covering October 1, 1983, to December 31, 1984, by writing insurance in excess of the premium income limits for that period.

Forum filed its original counterclaim against Bryants on March 17, 1989, alleging that if there were premium income limits for contract years three and four, then those limits bound Forum "only if it be determined that Bryant *** offered or accepted the terms on Forum's behalf," and that determination would be based on "an apparent authority. Forum did not extend any actual authority, express or

implied, to Bryant *** to offer or accept the premium income limits on its behalf."

Forum also alleged that Darrah and Bryants, who had principal offices in the same building in South Carolina, arranged this program with the underwriters before contacting Forum and several other insurance companies to find one willing to write the insurance. Forum acted solely as a fronting company, allowing the underwriters indirectly to write commercial vehicle liability insurance. The underwriters and Darrah controlled the program, and Darrah took instructions from the underwriters, not Forum. Forum relied on the underwriters and their agents, Darrah and Bryants, to run the program prudently and advise Forum of adverse developments. Darrah negligently, and in breach of its fiduciary duty to Forum, failed to collect and send accurate information on the program and failed to adhere to guidelines for writing policies and settling claims.

Forum alleged that Bryants failed to "produce and supply accurate information about claims handling and reserves under the program," failed to "produce information about claims handling practices and reserving policies of Darrah" and failed to supervise the program properly. Because of these failings, Forum incurred losses on policies that should never have been issued, and Forum incurred loss "by continuing as the 'fronting company' in the Program in contract years 3 and 4; *** by taking a larger share of the insurance risk in contract year 4; [and] *** by continuing in the Program after contract year 4."

Forum in a separate count alleged that Darrah, Cassidy and Bryants devised a deceptive scheme to induce Forum to perpetuate the program into a fifth year, for which Forum would take on more risk and the underwriters would accept no risk.

Cassidy and Forum eventually settled their suit against Darrah and Quantex Corporation, which now owns Darrah. Darrah and Quantex are not involved in this appeal, although Bryants' claims against Darrah and Darrah's counterclaims against Bryants remain to be resolved. Following extensive discovery, Forum added three "Supplemental Counterclaims" against Bryants on March 21, 1991. On March 27, 1991, Cassidy dismissed his claims against Forum pursuant to a settlement agreement, and in April 1991 he filed a third amended complaint. Cassidy adopted Forum's supplemental counterclaims as counts V, VI and VII of the third amended complaint, under an assignment of Forum's claims.

In the supplemental counterclaim which Cassidy adopted, Forum again described the program as a product of discussions between Darrah and Bryants, with Forum later agreeing to act as the front for

the program and Bryants negotiating reinsurance to cover most of Forum's risk. In count V of the third amended complaint, Cassidy, as assignee of Forum, alleged that for contract year three, Bryants, "[a]cting on Forum's behalf, but without Forum's prior knowledge or approval," accepted premium income limitations, thereby breaching its duties as Forum's agent for negotiating reinsurance.

Cassidy, as Forum's assignee, alleged in count VI that the reinsurance agreements which Bryants negotiated with the underwriters "fail properly to cover losses arising from State assigned risk and assessment plans where future *** assessments are made on the basis of the amount of business originally written during the contract year." Bryants knew that Forum sought reinsurance for such future assigned risks when they negotiated reinsurance which failed to provide the coverage sought. The record contains no further description of the State assigned risk plans.

In count VII Cassidy, as Forum's assignee, alleged that Bryants, as intermediaries in the program, knew that both Forum and the underwriters relied on information Bryants supplied in making judgments about whether to renew the program each year. Bryants represented that they had a particularly close relationship with Darrah, partially because they maintained offices in the same building as Darrah, and therefore, they were especially capable of overseeing the program. As Forum's agent for negotiating reinsurance, Bryants had fiduciary duties to disclose to Forum the information they had concerning the program. Bryants breached their fiduciary duties by failing to collect and send to Forum accurate information about the program. Because of that breach, Forum relied on inaccurate information when it decided to "renew[ ] its role as the policy issuing company in Contract Years 3, 4, and 5 of the program."

Bryants moved to dismiss counts V, VI and VII of Cassidy's third amended complaint based on the statute of limitations. Cassidy answered that the counts related back to both Cassidy's original complaint and Forum's original counterclaim. Cassidy also claimed that the limitations period for count VI had not run when Cassidy filed his third amended complaint. After hearing argument, the trial court held that counts V, VI and VII did not relate back to either earlier pleading because those counts stated new causes of action against Bryants. The court dismissed the counts and found "no just reason for delaying enforcement or appeal." This court assumes jurisdiction over this second interlocutory appeal under Supreme Court Rule 304(a). 134 Ill. 2d R. 304(a).

To determine whether counts V, VI and VII of the third amended complaint are barred by the statute of limitations, we must decide whether each count relates back to earlier pleadings and when the limitations period began to run for each count. The parties agree that all of these claims are governed by the five-year limitations period applicable to "civil actions not otherwise provided for." Ill. Rev. Stat. 1991, ch. 110, par. 13—205.

Cassidy contends that all three counts relate back to his original complaint or Forum's original counterclaim. Bryants respond that since the three counts are Forum's claims against them, they cannot relate back to Cassidy's original complaint, and even if they could, they do not relate back to either Cassidy's original complaint or Forum's original counterclaim because the three counts allege duties different from those alleged in the original complaint and counterclaim. While we agree with Cassidy that Forum's claims could conceivably relate back to the original complaint, we find that they do not relate back under the facts and circumstances in this case.

Generally, a new party may move to be added as coplaintiff in an amended complaint after the limitations period for the new party's claim has expired. (*Geneva Construction Co. v. Martin Transfer & Storage Co.* (1954), 4 Ill. 2d 273, 122 N.E.2d 540.) The amended pleadings seeking recovery for the new party will relate back to the original complaint as long as the new party's claim "grew out of the same transaction or occurrence set up in the original pleading." Ill. Rev. Stat. 1991, ch. 110, par. 2—616(b).

In *Geneva*, the original plaintiff, Geneva, sued Martin for amounts Geneva paid its employee, Powers, as workers' compensation for injuries Powers suffered, while working for Geneva, because of Martin's negligence. More than two years after the limitations period expired, Powers sought leave to intervene as an additional plaintiff to recover for those injuries amounts in excess of the workers' compensation he received from Geneva. The trial court allowed the intervention and amendment of the complaint. Based on a jury verdict for plaintiffs, Geneva recovered its entire workers' compensation payments of almost $4,000, and Powers recovered an additional $11,000.

Our supreme court affirmed, finding that Powers' cause of action grew out of the occurrence set up in the original complaint. Martin argued that Powers' claim could not relate back because Geneva did not intend to sue for anything other than its own loss of workers' compensation payments. The court rejected the argument as it "would restore the formalistic approach to amendments to pleadings

which the legislature has sought to eliminate." *Geneva*, 4 Ill. 2d at 289.

Bryants cite *McGinnis v. A.R. Abrams, Inc.* (1986), 141 Ill. App. 3d 417, 490 N.E.2d 115, as contrary authority. In *McGinnis*, the plaintiff sued to recover for his injuries, and after the limitations period expired, he sought leave to amend to add his wife as a plaintiff suing for loss of consortium. The trial court dismissed the added count and the appellate court affirmed.

*McGinnis* does not conflict with *Geneva*. The original complaint in *McGinnis* did not indicate that plaintiff was married or that his wife in any way participated in the alleged occurrence. The defendant in that case could not know from the original complaint that he could also be liable to the plaintiff's wife, or that she had suffered loss of consortium due to the defendant's conduct. The complaint in *Geneva*, on the other hand, stated facts showing that Powers also suffered injury due to the defendants' alleged conduct. Geneva could not state its claim to recover workers' compensation payments without alleging that Martin's conduct proximately caused Powers' injury. *Geneva* did not involve substitution of the proper party for the claim, as Bryants suggest; Powers was clearly a new party with a claim distinct from Geneva's and his damages were measured by a standard independent of the measure of Geneva's damages. His claim related back to the original complaint because the complaint sufficiently informed Martin of the alleged occurrence as well as the fact that Martin's alleged conduct injured Powers.

Thus, a new plaintiff's claim will relate back to the original complaint as long as the claim grew out of the occurrence set up in the original complaint, but the claim of a new plaintiff does not grow out of the occurrence alleged in the original complaint unless the original complaint states facts showing that the misconduct which caused the original plaintiff's harm also caused the new plaintiff's harm, effectively apprising defendant that he could be liable to the plaintiff later added in the amended complaint.

■ Bryant argues that if Forum's supplemental counterclaims could relate back to Cassidy's original complaint, Cassidy would have a greater right to assert Forum's claims than Forum itself had, violating the principle that an assignee cannot take any greater right than the assignor had to give. (See *Town & Country Bank v. James M. Canfield Contracting Co.* (1977), 55 Ill. App. 3d 91, 96, 370 N.E.2d 630.) Since Cassidy sued both Bryants and Forum in his original complaint, Forum could not intervene as an added plaintiff against Bryants. Forum needed to state its claims against Bryants in a coun-

terclaim pursuant to section 2—608 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—608(a)). A defendant's claims against codefendants pleaded in a counterclaim do not relate back to the original complaint, and they are barred by the statute of limitations if the original counterclaim is filed after the limitations period has expired. See *Dignan v. Midas-International Corp.* (1978), 65 Ill. App. 3d 188, 382 N.E.2d 559.

■ However, when Cassidy settled the claim and dismissed the suit against Forum, Forum could have realigned as a coplaintiff in Cassidy's continuing suit against Bryants. (Ill. Rev. Stat. 1991, ch. 110, par. 2—1008(a).) As a coplaintiff, Forum would have had the rights of any coplaintiff added after the statute of limitations had run; if Forum's claim grew out of the transaction set up in the original complaint, its claim would relate back to that complaint. Therefore, Forum's supplemental claims could relate back to the original complaint even without the assignment to Cassidy, so Cassidy has not here asserted a right to pursue Forum's claims greater than the right Forum had to pursue those claims.

In count V of the third amended complaint, Cassidy alleged that Bryants, acting on Forum's behalf, negotiated with the underwriters a reinsurance agreement for contract year three to include a premium income limit, although Forum neither knew of nor approved the limitation, thereby breaching their duties as insurance brokers procuring reinsurance for Forum. In his original complaint, Cassidy alleged that the reinsurance contract for year three imposed premium income limits on Forum and Darrah, and Forum and Darrah exceeded those limits. Although Cassidy alleged that Bryants negligently provided inaccurate information to the underwriters, he did not in the original complaint state that Bryants negotiated reinsurance on Forum's behalf, and that complaint does not indicate that Bryants breached any duty by negotiating the premium income limits. Although the transaction in the original complaint, in one sense, gave rise to the claim in the amended complaint, the original complaint does not indicate that Bryants could be liable to Forum for negotiation of the premium income limits. Therefore, count V of the third amended complaint does not relate back to the original complaint.

We must now separately determine whether count V of the third amended complaint relates back to Forum's original counterclaim. The counterclaim includes allegations that if there were a premium income limit for contract year three, then that limit bound Forum only because Bryants, with apparent authority, accepted the limit on Forum's behalf, although Forum did not actually authorize Bryants to

accept the limit. The trial court found that the amended complaint did not relate back to the original counterclaim because the amended complaint added the allegation that Bryants were acting as Forum's agents for negotiating reinsurance.

> "Illinois courts are liberal in allowing amendments to pleadings after the running of the statute of limitations. *** The courts in the cases cited by plaintiff allowed the amended pleading to 'relate back' to the filing of the original pleading because the cause of action asserted in the amended complaint grew out of the same set of facts and circumstances alleged in the original complaint. The defendant in each case was given adequate notice and knowledge of the incident giving rise to the lawsuit. ***
>
> ***
>
> The shift in focus from the identity of the cause of action in the original and amended complaints under our pre-Civil Practice Act pleading to the identity of the occurrence or transaction under our practice act is bottomed on the belief that if the defendant has been made aware of the occurrence or transaction which is the basis for the claim, he can prepare to meet the plaintiff's claim, whatever theory it may be based on." *Zeh v. Wheeler* (1986), 111 Ill. 2d 266, 278-79, 489 N.E.2d 1342.

Here, Forum's original counterclaim made Bryants aware that Forum claimed that if they accepted premium income limits when they negotiated reinsurance, they did so without authority, in breach of their duties to Forum, thereby injuring Forum. By preparing to meet this claim, Bryants would have investigated the premium income limits, their authority as intermediaries to negotiate such limits and the effect on Forum of such limits. This preparation is effectively the same as the preparation they would need to meet the allegations of count V of the third amended complaint. The original complaint effectively informed Bryants of the nature of the liability eventually asserted in count V of the third amended complaint. Count V of the third amended complaint relates back to Forum's original counterclaim, filed March 17, 1989. See *Geneva*, 4 Ill. 2d at 289-90; *Zeh*, 111 Ill. 2d at 278.

Bryants contend that the five-year limitations period for count V began to run when they completed negotiation to include premium income limits, which, according to the amended complaint, applied to the reinsurance only for contract year three. Since the underwriters signed the reinsurance slips for that year in October 1983, the limitations period for count V began running at least by that time. Cassidy

answers that the statutory period did not start to run until some time after March 1984, when Forum first suffered damages due to the premium income limit.

In general, a "statute of limitations commences to run when the party to be barred has a right to invoke the aid of the court to enforce his remedy." (*Beynon Building Corp. v. National Guardian Life Insurance Co.* (1983), 118 Ill. App. 3d 754, 762, 455 N.E.2d 246.) For most torts, the cause of action accrues when the plaintiff suffers injury. (*Ozark Airlines, Inc. v. Fairchild-Hiller Corp.* (1979), 71 Ill. App. 3d 637, 390 N.E.2d 444.) If the plaintiff did not know of the injury when it occurred, courts may apply the discovery rule, which "simply means that the court will use the date upon which the plaintiff knew or should have known that he was injured as the day when the designated limitations period begins." *Lincoln-Way Community High School District 210 v. Village of Frankfort* (1977), 51 Ill. App. 3d 602, 608, 367 N.E.2d 318.

For torts involving negligence in the performance of a contract or neglect of a contractual duty, the rule is different.

"[W]here the tort arises out of a contractual relationship *** [the limitations period] commences at the time of the breach of duty, not when the damage is sustained. [Citation.] The principal reason is that the breach itself is actionable. This rule encourages the party to act within five years of the breach rather than to delay until damages increase." (*West American Insurance Co. v. Sal E. Lobianco & Son Co.* (1977), 69 Ill. 2d 126, 132, 370 N.E.2d 804.)

Where the plaintiff did not know of the breach, courts may apply the discovery rule to torts arising out of contracts. (*Commonwealth Edison Co. v. Encompas, Inc.* (1987), 158 Ill. App. 3d 852, 511 N.E.2d 988.) Under that rule, the limitations period begins to run when the plaintiff should have known of the breach of the contractual duty.

Cassidy alleges in count V that Bryants breached their duties to Forum by negotiating reinsurance on Forum's behalf to include a premium income limit which Forum did not authorize them to accept. This is an allegation of Bryants' neglect in the performance of a contractual duty they owed Forum as insurance brokers negotiating reinsurance for Forum. Under *Lobianco*, Forum's cause of action accrued when Bryants negotiated the reinsurance for contract year three, and Bryants completed that negotiation by October 1983. The five-year statutory period ended in October 1988, five months before Forum filed its original counterclaim.

Count V cannot be considered timely under the discovery rule because the amended complaint does not include allegations of late discovery of the improper negotiations. "A plaintiff seeking to take advantage of the discovery rule must plead that the cause of action remained unknown to the plaintiff." (*Cundiff v. Unsicker* (1983), 118 Ill. App. 3d 268, 272, 454 N.E.2d 1089.) Since the limitations period for the contractual tort described in count V expired in October 1988, and the count does not include allegations of late discovery, the relation back to the original counterclaim, filed in March 1989, is insufficient to save the count from dismissal. Accordingly, we affirm the trial court's decision to dismiss count V of the third amended complaint.

■■ In count VI of his third amended complaint, Cassidy seeks to recover amounts Forum lost because Bryants failed to obtain reinsurance for Forum's State assigned risk and assessment plans. Cassidy characterizes count VI as alleging that Bryants failed to "communicate to Forum the fact that Underwriters would not agree to cover assigned risks." Cassidy contends that the amended count VI relates back to the original complaint because in that complaint Cassidy alleged that Bryants failed to communicate to the underwriters information and statistics regarding the program. Cassidy maintains, in the alternative, that the count relates back to Forum's original counterclaim because in the counterclaim Forum alleged that Bryants failed to provide information to Forum and negligently carried out their duties in the operation of the program.

Neither the original complaint nor the counterclaim notifies Bryants that they failed to negotiate adequate reinsurance coverage for Forum's risks. Neither the complaint nor the counterclaim even mentions the State assigned risk and assessment plans. Cassidy's original complaint does not indicate that Bryants failed to give Forum any information, as in that complaint Cassidy claimed instead that Bryant obtained the information from Forum which it sent on to the underwriters. Forum's original counterclaim indicates only that Bryants concealed from Forum their intention to shift program losses into contract year five, and Bryants harmed Forum by their failure to supply adequate information about claims handling practices, loss reserves and policies implemented in the program. The complaint and the counterclaim do not inform Bryants that they needed to investigate the adequacy of the reinsurance coverage they procured for Forum, or that they might be held liable for failing to obtain coverage for State assigned risks. Therefore, count VI does not relate back to either Cassidy's original complaint or Forum's original counterclaim.

Cassidy contends that the limitations period for this count had not expired when he filed his third amended complaint in April 1991. In his trial court brief in opposition to the motion to dismiss, Cassidy stated that Forum did not discover that it had no reinsurance for State assigned risks until May 1986, when Forum first needed such coverage. However, the complaint does not include any allegations concerning the discovery of the lack of full reinsurance. For count VI, as for count V, Cassidy has not included in his amended complaint allegations sufficient to bring the cause within the discovery rule.

Although Cassidy's attorney sought leave to replead count VI or present affidavits concerning the date of discovery of the injury at oral argument in the trial court, he did not present a proposed fourth amended complaint either to the trial court or to this court. In *Lowrey v. Malkowski* (1960), 20 Ill. 2d 280, 170 N.E.2d 147, plaintiff attempted to state a cause of action under a statute which had a one-year limitations period. The trial court dismissed the complaint and our supreme court affirmed, finding that the cause of action accrued more than one year before plaintiff brought suit. The plaintiff argued that the trial court abused its discretion when it refused to allow her to amend her complaint to show continuing injury. The court held:

"The trial judge has broad discretion in permitting or refusing amendments and we will review only a manifest abuse of such discretion. [Citations.] In the present case we are powerless to review the exercise of discretion by the trial judge, as plaintiffs have failed to incorporate the proferred amendment in their record on appeal. We must, therefore, assume that the refusal to permit such an amendment was not prejudicial to plaintiffs." *Lowrey*, 20 Ill. 2d at 285.

Since Cassidy did not profer a proposed fourth amended complaint to the trial court, nor did he incorporate one into the record on appeal, we cannot review the trial court's decision to deny the oral motion for leave to amend the complaint. Count VI does not relate back to either the original complaint or the original counterclaim, and it contains insufficient allegations to bring it within the discovery rule. Therefore, we affirm the trial court's decision to dismiss count VI of the third amended complaint.

In count VII, Cassidy alleges that Bryants, as insurance intermediaries, breached their fiduciary duties to Forum and the underwriters by failing to monitor Darrah's compliance with underwriting guidelines, by failing to report all material information about Darrah's operations and by failing to collect and send accurate information about claims handling and reserves under the program. Because of

these failings, Forum renewed its participation in contract years three, four and five of the program, to its considerable detriment.

These allegations closely reflect the facts alleged in Cassidy's original complaint. There, Cassidy alleged that Bryants violated their duties to obtain and send accurate information concerning claims and loss experience in the program, which the underwriters would use to set insurance premiums and to decide whether to renew participation in the program each year. However, the original complaint alleges that Bryants obtained their information from Forum; the complaint states no facts which put Bryants on notice that they could be liable to Forum for failing to collect and send adequate information. Count VII alleged a different occurrence, of failing to give Forum adequate information, from the occurrence described in the original complaint, and therefore that count does not relate back to the original complaint.

Forum, in its original counterclaim, alleged that Bryants failed to monitor the program and supply accurate information concerning claims handling and reserves, and that Forum therefore incurred losses by continuing as the fronting company for contract year three and thereafter. In investigating these allegations, Bryants would have prepared a defense to the essential allegations now contained in Cassidy's count VII, as they would investigate the information they collected and sent about the program, their responsibility for monitoring the program and whether Forum relied on information from Bryants when it decided to continue participation in the third, fourth and fifth contract years. Count VII relates back to Forum's original counterclaim, filed March 17, 1989.

Forum agreed to renew participation for contract year four by October 1984, and for contract year five by January 1985. Bryants do not argue that Forum's original counterclaim was filed too late to preserve Forum's claims for those years. Since the claim for those years under count VII relates back to the original counterclaim, filed in March 1989, and the five-year limitations period for those years did not expire until October 1989 and January 1990, the trial court erred in dismissing that part of the complaint.

Forum agreed to renew participation for contract year three by October 1983. The tort alleged in count VII, of failing to inform Forum about claims and loss reserves, arose from contractual duties Bryants owed Forum as intermediaries. Bryants must have completed the alleged misconduct, the contractual tort which induced Forum to renew participation for contract year three, by October 1983. Therefore, unless the discovery rule applies, the limitations period for the

claim based on renewal for contract year three expired by October 1988.

While the court can fairly infer from the pleadings that Forum did not discover the breach until some time after October 1983, since Forum would not have renewed participation in the program if it knew of the breach, the pleadings do not specify any later discovery date. Neither in his brief nor in his oral argument to the trial court did Cassidy offer to present evidence of a later discovery date. Cassidy instead relied on the date Forum first suffered damages, which is not the date for beginning the limitations period for a contractual tort, although it may be evidence of when Forum should have known of the breach. Since the tort must have occurred before October 1983, and Cassidy has not alleged facts sufficient to bring the cause within the discovery rule, the trial court properly dismissed the claim for contract year three in count VII.

Cassidy's original complaint does not contain factual allegations which give Bryants notice that their alleged misconduct would have injured Forum as well as Cassidy. Therefore, Forum's claims cannot grow out of the occurrences set up in Cassidy's original complaint. The trial court correctly ruled that Cassidy's claims as Forum's assignee did not relate back to the original complaint.

Although count V of the third amended complaint relates back to Forum's original counterclaim, Forum filed that counterclaim more than five years after Bryants negotiated the premium income limits for contract year three. Since this is a contractual tort, and Cassidy did not allege facts in the complaint bringing the count within the discovery rule, the trial court properly found count V barred by the statute of limitations.

Count VI raises new claims based on facts not asserted in prior pleadings, so it does not relate back to Forum's original counterclaim. If Forum did not discover the tortious conduct until May 1986, the limitations period would not have expired when Cassidy filed the third amended complaint. However, the third amended complaint contains no factual allegations to bring the count within the discovery rule, and Cassidy failed to present a proposed fourth amended complaint to correct this deficiency in the third amended complaint. Therefore, we affirm the dismissal of count VI.

Count VII includes claims based on renewal of the program for contract years three, four and five. The entire count relates back to Forum's original counterclaim since both the amended complaint and the original counterclaim allege that Bryants are liable to Forum for their failure to monitor the program and provide accurate information

about the program to Forum. Insofar as the count states a claim relating to contract year three, it alleges a contractual tort that was completed before October 1983. Since Cassidy has not alleged facts bringing the count within the discovery rule, and since he did not seek leave to amend to plead such facts, we affirm the dismissal of the part of count VII which states a claim for damages arising from Forum's renewal of its participation for contract year three. Insofar as count VII includes claims based on Forum's renewal of participation in the program for contract years four and five, Forum filed its counterclaim within the five-year limitations period. We reverse the trial court's decision to dismiss the parts of count VII relating to years four and five.

Affirmed in part and reversed in part.

HARTMAN and SCARIANO, JJ., concur.