**In re OSTROM–MARTIN, INC., Debtor.**

**Richard E. BARBER, Chapter 7 Trustee for Ostrom–Martin, Inc., Plaintiff,**

v.

**FIRST NATIONAL BANK OF CHILLICOTHE and Princeville State Bank, Defendants.**

**PRINCEVILLE STATE BANK, Cross–Plaintiff,**

v.

**FIRST NATIONAL BANK OF CHILLICOTHE, Cross–Defendant.**

No. 92–80099.
Adv. No. 92–8164.

United States Bankruptcy Court, C.D. Illinois.

March 5, 1996.

Barry M. Barash, Barash, Stoerzbach & Henson, Galesburg, IL, for Plaintiff.

Richard E. Barber, Chapter 7 Trustee, Galesburg, IL.

Gregg N. Grimsley, Vonachen, Lawless, Trager & Slevin, Peoria, IL, for Princeville State Bank.

Michael T. Mahoney, Chillicothe, IL, Duncan G. Harris, Schiff, Hardin & Waite, Chicago, IL, for First National Bank of Chillicothe.

## OPINION

WILLIAM V. ALTENBERGER, Chief Judge.

The matter presently before the Court is the motion of the First National Bank of Chillicothe (FIRST) to dismiss the cross-claim of the Princeville State Bank (PRINCEVILLE). The facts giving rise to this adversary proceeding and the cross-claim are set forth in two previous opinions of this Court [1]. For the purposes of FIRST's motion they are summarized as follows.

On September 3, 1991, the Debtor, through Kevin Martin, its President and Chief Operating Officer, issued a check in the amount of $300,000.00 payable to Rumbold Valley Farms. Kevin Martin then placed an endorsement on the reverse side of the check "Pay to the order of Martin Farms, Inc." and beneath that endorsement he added the words "Rumbold Valley Farms" and signed "Elwin Rumbold." Kevin Martin then deposited the check in the Martin Farms, Inc. account at FIRST. FIRST accepted the check for deposit and credited the account of Martin Farms, Inc. PRINCEVILLE paid the check when presented by FIRST.

After an order of relief was entered against the Debtor, the Chapter 7 Trustee in Bankruptcy (TRUSTEE), on September 29, 1992, brought this adversary proceeding against both FIRST and PRINCEVILLE to recover the amount of the check. On October 29, 1992, PRINCEVILLE filed a motion to dismiss the complaint and in that motion stated:

3. There is no liability as a matter of law under these circumstances. PRINCEVILLE STATE BANK is merely a "payor" bank as that term is defined by Section 4–105 of the Uniform Commercial Code. FIRST NATIONAL BANK OF CHILLICOTHE is the collecting bank, which war-

---

1. *In re Ostrom–Martin, Inc.,* 188 B.R. 245 (Bkrtcy.C.D.Ill.1995) and 155 B.R. 997 (Bkrtcy. C.D.Ill.1993).

rants to the payor bank that all prior signatures are genuine. The Uniform Commercial Code places no responsibility on a bank that is merely acting as a payor bank to ensure that the endorsements by the payee of the instrument, or subsequent endorsements, are genuine.[2]

On August 4, 1993, PRINCEVILLE filed its Answer and Affirmative Defenses, the Second Affirmative Defense being:

> Plaintiff is barred from any ultimate recovery from PRINCEVILLE STATE BANK under Section 3–417 of the Uniform Commercial Code due to the fact that FIRST NATIONAL BANK OF CHILLICOTHE, as the depository bank, by law gives to the payor bank, PRINCEVILLE STATE BANK, a warranty of endorsement. Therefore, if any liability is found, FIRST NATIONAL BANK OF CHILLICOTHE must indemnify PRINCEVILLE STATE BANK.

The Joint Pretrial Statement, filed October 6, 1993, provided in part as follows:

> b. The trustee's cause of action against the Princeville bank is occasioned by Princeville's payment of a check with a forged endorsement. But Princeville is entitled to rely on its warranties as against Chillicothe. The trustee believes that the ultimate loss should fall on Chillicothe.

On March 6, 1995, PRINCEVILLE filed a Motion for Summary Judgment which stated in part:

> 13. The admissions of the trustee set forth in the trustee's Brief in Opposition to Princeville State Bank's Motion to Dismiss states:
>
> > As between Chillicothe and Princeville, the loss falls ultimately on Chillicothe ... Ultimately, as between the two banks, the loss falls on Chillicothe by

reason of the warranties imposed by UCC Sec. 3–417.[3]

On November 1, 1995, PRINCEVILLE filed its Cross–Claim against FIRST based on § 3–417 and § 4–208 of the Uniform Commercial Code (UCC) as adopted in Illinois, 810 ILCS 5/3–417 and 5/4–208. In response, FIRST filed the Motion to Dismiss the Cross–Claim, relying on § 3–118(g) of the UCC, 810 ILCS 5/3–118(g) which provides as follows:

> (g) Unless governed by other law regarding claims for indemnity or contribution, an action (i) for conversion of an instrument, for money had and received, or like action based on conversion, (ii) for breach of warranty, or (iii) to enforce an obligation, duty, or right arising under this Article and not governed by this Section must be commenced within 3 years after the cause of action accrues.

Both § 3–417 and § 4–208 contain a subsection (f) which provides as follows:

> (f) A cause of action for breach of warranty under this Section accrues when the claimant has reason to know of the breach.

FIRST contends that the TRUSTEE gave PRINCEVILLE notice of the forged endorsed check on September 25, 1992, so PRINCEVILLE's cause of action against FIRST accrued on September 25, 1992, and that PRINCEVILLE filed its cause of action against FIRST more than three years later, when it filed its cross-claim on November 1, 1995. PRINCEVILLE contends, first, that § 3–118(g) is not applicable as it became effective January 1, 1992.[4] Second, PRINCEVILLE contends that its affirmative defense filed August 4, 1993, alerted FIRST of its cross-claim and the actual filing of the cross-claim relates back to the affirma-

---

**2.** The motion to dismiss was joined in by FIRST, and was denied by this Court on June 29, 1993.

**3.** FIRST also filed a motion for summary judgment. On October 12, 1995, PRINCEVILLE's motion was denied. As to FIRST's motion for summary judgment, this Court held that the TRUSTEE could not bring a direct action and gave PRINCEVILLE the opportunity to vouch-in FIRST.

**4.** As stated in *Brady on Bank Checks,* (7th Ed.) ¶ 4.18, prior to the amendment to the UCC:

> "There is no general statute of limitations in the 1962 UCC for either Article 3 or Article 4. Instead, statutes of limitation governing the time to sue in particular kinds of transactions or settings for particular states would govern. The 1990 UCC does have statutes of limitations governing the time to sue under both Articles 3 and 4." (Footnotes omitted)

tive defense, so that the cause of action was filed within three years.

The current version of the UCC became effective January 1, 1992. As the check was drawn, negotiated, and honored, prior to that date, PRINCEVILLE contends § 3–118(g) of the UCC is not applicable. In this adversary proceeding, PRINCEVILLE earlier argued that the previous version of the UCC, and not the current version, governs the applicable substantive law, and this Court so held. However, PRINCEVILLE's cross-claim is pled based on the current version of the UCC. FIRST's motion attacking the cross-claim is also based on the statute of limitations found in the current version of the UCC. This Court again holds that the substantive law applicable to this adversary proceeding is the law found in the previous version of the UCC. This Court further holds that as PRINCEVILLE has based its cross-claim on the current version of the UCC, the statute of limitations found in the current version of the UCC should be applied. PRINCEVILLE cannot pick and choose. Regardless of whether that was a correct allegation, as it chose to base its cross-claim on the current version of the UCC, the statute of limitations found in the current version of the UCC must be applied.

PRINCEVILLE now argues that it doesn't make any difference which version of the UCC is applied. While it is true that both the previous and the current versions of the UCC contain similar warranty provisions applicable to the facts of this adversary proceeding, there are some differences. In *Brady on Bank Checks*, (7th Ed.) ¶ 12.14, p. 12–30, it is stated:

> The 1990 UCC changes the structure and wording of the provisions on presentment warranties from those of the 1962 UCC but the changes do not represent any shift in the basic law governing such warranties. The cases discussed previously should for the most part, remain good law under the 1990 UCC.

When discussing the 1990 UCC, however, various differences are mentioned. It is stated at p. 12–32:

> The 1990 provisions on transfer warranties are a revision of the 1962 provisions and also separate into different sections the rules on presentment and transfer warranties. The basic warranties are given by a customer or collecting bank that transfers an item and receives a settlement or other consideration. The warranties run to a transferee and to any subsequent collecting bank, but not to the drawee or payor.

> The warranties are substantially those of the 1962 UCC: (1) that the warrantor is entitled to enforce the instrument; (2) that all signatures are authentic and authorized; (3) that the item has not been altered; (4) that the item is not subject to a defense or claim in recoupment available against the warrantor; and (5) that the warrantor has no knowledge of any insolvency proceeding commenced with respect to the maker or acceptor, or the drawer of an unaccepted draft.

It is also added however, at p. 12–33:

> Under the 1990 UCC, a customer or collecting bank also gives an engagement to pay the item if it is dishonored. This engagement runs to the transferee and to any subsequent collecting bank. The engagement may not be disclaimed by a without recourse or similar indorsement.

In discussing the damages for a breach of warranty, it is stated at ¶ 12.16, p. 12–36:

> The 1990 UCC expands the damages rule of the 1962 UCC in several different provisions …

In discussing other warranty provisions at ¶ 12.17, p. 12–38, it is stated:

> The 1990 UCC also has a provision requiring the giving of notice of a claim for breach of warranty, but substitutes a thirty-day period in place of the reasonable time of the 1962 UCC.

> The 1990 UCC also has a provision stating that a cause of action for breach of warranty accrues when the claimant has reason to know of the breach. No such rule was in the 1962 UCC, and it is not clear when a cause of action would accrue under the 1962 breach-of-warranty provisions. The statute of limitations for bring-

ing a claim for breach of warranty is three years under the 1990 UCC.

In the 1995 Cum.Supp. No. 2, to *Brady*, it discusses the retroactive application of the changes at ¶ 1.8, at p. S1–5:

Two courts have held, under Illinois law, that the 1990 UCC should not be applied retroactively to facts that antedate the effective date of that version in Illinois. One court has held that under Minnesota law, the 1990 UCC should not be applied retroactively. Another Minnesota case also involved an issue of retroactive application of the 1990 UCC Articles 3 and 4, which were adopted in Minnesota and took effect in 1992. The action involved a complaint for breach of contract that was filed in 1990; the plaintiff amended the complaint in 1993 to add conversion and fraud claims. The court held that the action was governed by the law in effect in 1990 and that new UCC Articles 3 and 4 could be relied upon to the extent that they served merely to clarify the intent of the old UCC or to clarify previously recognized usages and practices.

The latter case discussed is *Lassen v. First Bank Eden Prairie*, 514 N.W.2d 831 (Minn. Ct.App.1994).

One of the Illinois cases referred to is this Court's earlier decision in *In re Ostrom–Martin, Inc.*, 155 B.R. 997 (Bkrtcy.C.D.Ill. 1993), and the other one is *Johnson v. Johnson*, 244 Ill.App.3d 518, 185 Ill.Dec. 214, 614 N.E.2d 348 (1993). At issue in *Johnson* was whether a note was a negotiable instrument under the UCC because it failed to state a sum certain as required by § 3–104. Addressing the argument that the 1992 amendment applied to the note, the court stated:

This amendment to the UCC affects the manner in which we construe commercial paper. It establishes new criteria for defining negotiable instruments. It is clearly substantive in nature and amendatory acts will be construed as prospective where the change is substantive rather than procedural. (Citations)

While we believe that the 1992 amendment has no retroactivity, at least one State (New Jersey) has adopted a contrary view. (*Carnegie Bank v. Shalleck*, (1992),

256 N.J.Super. 23, 606 A.2d 389.) Where the note was executed in 1989, the trial held in 1990, and the New Jersey UCC amended in 1992, the New Jersey court determined that the amendment was curative, embracing the expectations of the parties. With remarkable casuistry, the New Jersey court suggests that an exception to the non-retroactivity rule the amendment attempts to improve a statutory scheme and bring the law into harmony with the expectations of the parties and the law in the commercial market place. (Citation)

Applying such retroactivity does just the opposite. It is generally unfair and makes the parties unsure of the bargain they have struck. The New Jersey court has contorted the rules of statutory construction to meet the exigencies of current lending [sic] practices. In Illinois, we do not so bend.

Had our General Assembly desired, it could have designated that the amendment be given retroactive application. Had the American Law Institute which promulgated the uniform act had such a desire, retroactivity could have been included in the comment.

In *Geldert v. American Nat'l Bank*, 506 N.W.2d 22 (Minn.Ct.App.1993), the court held that § 3–420 would not be applied retroactively:

[§ 3–420] clears up the confusion created by former [3–419], which did not specifically indicate to whom a depositary or collecting bank might be liable if it failed to act in good faith or in accordance with reasonable commercial standards. [§ 3–420] now expressly identifies those persons or entities who cannot maintain a conversion action against a depositary or collecting bank.

Revised Article 3 has no application to this case. Here, the conversion of the instruments occurred in 1984 and the suit was commenced before August 1, 1992, the effective date of [the amendment.] Furthermore, statutes are presumed to have no retroactive effect unless the legislature clearly and manifestly intended such appli-

cation. (Citation.) Nothing in the new statutory language or the comments indicates that the legislature intended [the amendment] to apply retroactively.

While the previous and current versions of the UCC are similar, there are differences. At this stage this Court does not know if those differences would affect the outcome of a trial. Therefore, as PRINCEVILLE has opted to base its cross-claim on the current version of the UCC, it must also comply with the statute of limitations found in the current version.

■ The check was written on September 3, 1991. PRINCEVILLE received notice of the forged endorsement on September 25, 1992. The TRUSTEE filed this adversary proceeding on September 29, 1992. PRINCEVILLE had until September 25, 1995, to make its claim against FIRST. As the cross-claim was not filed until November 1, 1995, it is barred by the Statute of limitations found in § 3–118(g), unless saved by PRINCEVILLE's previous pleadings in this adversary proceeding.

■ PRINCEVILLE's main argument is that it can take advantage of the relation back doctrine and that its cross-claim relates back to its previous pleadings which were filed prior to the statute of limitation running. It relies on Federal Rule of Civil Procedure 15(c), applicable in adversary proceedings by reason of Bankruptcy Rule 7015, which provides, in pertinent part:

(c) *Relation Back of Amendments.* An amendment of a pleading relates back to the date of the original pleading when

(1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading. . . .

FIRST contends the doctrine is not available to PRINCEVILLE, relying on three Illinois cases which interpret Ill.Rev.Stat. ch. 83, § 18, which provides:

A defendant may plead a set-off or counter claim barred by the statute of limita-

tion, while held and owned by him, to any action, the cause of which was owned by the plaintiff or person under whom he claims, before such set-off or counter claim was so barred, and not otherwise: . . . .

Those cases hold that the statute does not permit a defendant to file a cross-claim, even though a cross-claim is called a "counter-claim" under the Illinois Practice Act. *See Dignan v. Midas–International Corp.,* 65 Ill. App.3d 188, 22 Ill.Dec. 239, 382 N.E.2d 559 (1st Dist.1978); *Cassidy v. Derek Bryant Ins. Brokers,* 244 Ill.App.3d 1054, 184 Ill.Dec. 609, 613 N.E.2d 1201 (1st Dist.1993) (a defendant's claims against co-defendants pleaded in a counterclaim do not relate back to the original complaint). PRINCEVILLE counters by contending that it is the Federal Rules, and not the state statutes, that control.

In *U.S. for Bros. Builders Sup. v. Old World Artisans,* 702 F.Supp. 1561 (N.D.Ga. 1988), the court stated:

The issue of whether a cross-claim may relate back is resolved by federal common law in actions based upon federal question jurisdiction, and upon state law when the cause of action is based upon a state statute.

As PRINCEVILLE's cross-claim is based on state law, the doctrine of relation back is governed by state law. Under the laws of the State of Illinois, relation back is not available to PRINCEVILLE.

■ But even if federal law were applied, the doctrine is not available to save the cross-claim. Section 15(c)(1) of the Federal Rules of Civil Procedure would permit relation back if the UCC as adopted in Illinois permitted relation back. But as just noted, it doesn't. So § 15(c)(1) is not available to PRINCEVILLE.

■ Nor is § 15(c)(2) available to PRINCEVILLE. In *Kansa Reinsurance v. Congressional Mortg. Corp.,* 20 F.3d 1362 (5th Cir.1994), the court held that a cross-claim did not "relate back" to the filing of the original answer. The court stated:

Federal Rule of Civil Procedure 15(c) is a procedural provision to allow a party to

amend an operative pleading despite an applicable statute of limitations in situations where the parties to litigation have been sufficiently put on notice of facts and claims which may give rise to future, related claims. The rationale of the rule is that, once litigation involving a particular transaction has been instituted, the parties should not be protected by a statute of limitations from later asserted claims that arose out of the same conduct set forth in the original pleadings. 6A CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 1496 (1990). Rule 15(c) provides, in relevant part, that:

> Whenever the claim or defense asserted in the amended pleading arose out of the same conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

FED.R.CIV.P. 15(c). This so-called "relation back" doctrine "does not extend the limitations period, but merely recognizes that the purposes of the statute are accomplished by the filing of the initial pleading." (Citation)

As the district court observed, "[t]he necessary implication of the rule is that in order for an amended pleading to relate back for statute of limitations purposes, there must be a previous pleading to which the amendment dates back." It concluded that no such pleading existed. United Postal argues on appeal that the cross-claim related back to either HGIC's original complaint or to its [amended answer and counterclaim.] The cross-claim filed by United Postal is, however, an "original" cross-claim against a co-party, not an amendment to a previously filed pleading. Accordingly, it does not appear to be within the province of Rule 15(c). Furthermore Rule 13(g) governing cross-claims does not permit relation back of a cross-claim seeking affirmative and independent relief to the original complaint. (Citation)

United Postal relies heavily upon an unpublished opinion from the Southern District of New York, *Hemmerick v. Chrysler Corp.*, 1989 WL 4493 (S.D.N.Y. Jan. 13, 1989) in which the court allowed a plaintiff to amend his original complaint to assert an otherwise untimely cross-claim against his co-plaintiff. Pertinent to that case was the fact that both co-plaintiffs had been previously represented by the same counsel and that the cross-plaintiff sought to assert the cross-claim only after retaining independent counsel. In the instant case, by contrast, Stewart and United Postal have been represented by independent counsel with no potential conflict which would prevent United Postal from asserting the cross-claim. We are not persuaded that the *Hemmerick* result would be proper under the circumstances of this case.

United Postal alternatively argues that its amended answer is the relevant pleading to which we look for Rule 15(c) purposes and argues that this answer was effectively amended by the cross-claim; thus, it concludes, the cross-claim "relates back" to April 18, 1989. We disagree. The cross-claim does not amend the answer because it does not contain any of the allegations in either the amended answer or the counterclaim; rather, it stands alone. Moreover, the amended answer was a responsive pleading which did not assert—or even intimate—any allegations or wrongdoing against Stewart even though all the facts necessary to give rise to such allegations were present in HGIC's original complaint. In fact, the counterclaim did not even mention Stewart. Further, the counterclaim contained in the amended answer was aimed solely against HGIC and cannot be viewed as having put Stewart on notice that United Postal sought relief against Stewart. *See Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 149–50 n. 3, 104 S.Ct. 1723, 1724–25 n. 3, 80 L.Ed.2d 196 (1984) (holding that Rule 15(c) was designed to allow parties to present untimely claims based upon the same transaction so long as it would not work unfair surprise or prejudice). Stewart was not put on notice by the amended answer that it might have to satisfy two separate potential judgments.

The case presented is not one of joint and several liability where Stewart would at least be aware of the potential of a

contribution or indemnification cross-claim by United Postal. *See e.g. B.S. Livingston Export Corp. v. M/V Ogden Fraser,* 727 F.Supp. 144 (S.D.N.Y.1989) (allowing amendment to assert cross-claim for indemnification of damages plaintiff might potentially recover from cross-claiming defendant). Rather, the relief HGIC sought against United Postal was merely recissionary; there are no allegations that United Postal was an active participant in any scheme to defraud. This distinction is important because it has been carried over from the *common law rule,* and the federal courts still employ it. The courts are usually willing to allow a defendant to relate back a cross-claim in the nature of recoupment, indemnity, or contribution which seeks to reduce the amount a plaintiff can recover from that defendant; conversely, however, if the defendant's cross-claim "is an affirmative or independent cause of action not in the nature of a defensive claim, the defendant must comply with the applicable statute of limitations." *Brothers Builders,* 702 F.Supp. at 1569; *see also Appelbaum v. Ceres Land Co.,* 546 F.Supp. 17, 20 (D.Minn.1981), *Aff'd,* 687 F.2d 261 (8th Cir.1982).

As PRINCEVILLE's cross-claim is not in the nature of a defensive claim to the TRUSTEE's complaint, but an affirmative or independent cause of action against a co-defendant, the doctrine of relation back does not prevent the running of the statute of limitations.

■ PRINCEVILLE also argues it was only complying with this Court's previous order giving it the right to vouch-in FIRST. Section 3–803, the previous version of the UCC, provides:

§ 3–803. *Notice to Third Party*

Where a defendant is sued for breach of an obligation for which a third person is answerable over under this Article he may give the third person written notice of the litigation, and the person notified may then give similar notice to any other person who is answerable over to him under this Article. If the notice states that the person notified may come in and defend and that if the person notified does not do so he will in any action against him by the person giving the notice be bound by any determination of fact common to the 2 litigations, then unless after seasonable receipt of the notice the person notified does come in and defend he is so bound.

The Official UCC Comment provides, in part:

The section is new. It is intended to supplement, not to displace existing procedures for interpleader or joinder of parties.

The current version found in 810 ILCS 5/3–119 provides:

§ 3–119. Notice of right to defend action. If an action for breach of an obligation for which a third person is answerable over pursuant to this Article or Article 4, the defendant may give the third person written notice of the litigation, and the person notified may then give similar notice to any other person who is answerable over. If the notice states (i) that the person notified may come in and defend and (ii) that failure to do so will bind the person notified in an action later brought by the person giving the notice as to any determination of fact common to the 2 litigations, the person notified is so bound unless after seasonable receipt of the notice the person notified does come in and defend.

Both versions of the UCC are designed to have fact findings common to two actions determined in a single action, but contemplate a second action. As the TRUSTEE could not directly sue FIRST, this Court gave PRINCEVILLE the opportunity to vouch-in FIRST and thereby bind both banks as to any factual findings. However, vouching-in would only bind PRINCEVILLE and FIRST as to the facts. It would not eliminate the need for PRINCEVILLE to bring an action against FIRST.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

### ORDER

For the reasons set forth in the Opinion entered this day, IT IS HEREBY ORDERED that the Motion of the First Nation-

al Bank of Chillicothe to dismiss the cross-claim of the Princeville State Bank is ALLOWED and the cross-claim is hereby dismissed.

