(No. 50693

FINISH LINE EXPRESS, INC., *et al.,* Appellees, v. THE CITY OF CHICAGO *et al.*—(William J. Scott, Attorney General, Appellant.)

*Opinion filed July 14, 1978.*

132

William J. Scott, Attorney General, of Springfield (Fred F. Herzog, Special Assistant Attorney General, Paul J. Bargiel, Patricia Rosen, Gregory Lawton, Robert G. Epsteen, and William Lyle Perlman, Assistant Attorneys General, of Chicago, of counsel), for appellant.

Feiwell, Galper & Lasky, Ltd., and Block, Levy & Becker, of Chicago (George S. Feiwell, Michael A. Braun, Daniel C. Meenan, Jr., Alvin R. Becker, and Edward A. Scott III, of counsel), for appellees.

Edward M. White, of Chicago, for *amici curiae* Arlington Park—Washington Park Race Tracks Corp., Estate of Thomas Carey, d/b/a Hawthorne Race Course, National Jockey Club, Balmoral Racing Club, Suburban Downs, Inc., Chicago Downs Association, Inc., Fox Valley Trotting Club, Inc., and Maywood Park Trotting Association.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

Plaintiffs, corporations operating businesses commonly called racetrack-messenger services, brought this action in the circuit court of Cook County challenging the constitutionality of section 39.1 of the Illinois Horse Racing Act of 1975 (Ill. Rev. Stat. 1977, ch. 8, par. 37—39.1), which makes it a felony to accept, for a fee, money to be delivered to a racetrack for wagering on horse

races. The circuit court dismissed plaintiffs' complaint for failure to state a cause of action, but the appellate court reversed (59 Ill. App. 3d 419), finding that the plaintiffs' right to engage in business was unconstitutionally restrained and that "the proper remedy for the legislature would be to regulate the activities of these messenger services to be sure they operate within the framework of the Illinois Horse Racing Act, not to prohibit their operation" (59 Ill. App. 3d 419, 424). We granted the Attorney General leave to appeal and we now reverse the appellate court.

A preliminary question relates to the plaintiffs' motion to strike the Attorney General's brief or the references therein to a 1977 Legislative Investigating Commission Report to the Illinois General Assembly entitled "Race Track Messenger Services." Plaintiffs contend that this report is not a part of the record and cannot be utilized by counsel nor considered by this court.

The report in question is the product of the Illinois Legislative Investigating Commission, an agency created by the General Assembly. One of the primary functions of the Commission is "to conduct investigations *** on any matter upon which the General Assembly may legislate." (Ill. Rev. Stat. 1977, ch. 63, par. 301.) The report was prepared in response to Senate Resolution 447 adopted December 2, 1976, pertinent portions of which are as follows:

> "WHEREAS, There has recently been established in the State of Illinois messenger services which relay bets to race tracks; and
> WHEREAS, These services have reduced or may have a tendency to reduce attendance at the licensed race tracks in Illinois; and
> WHEREAS, Reduced attendance at the licensed race tracks and racing meets reduces revenues to concessionaires and race meet operators licensed by the State of Illinois and as a result reduces revenues to the State of Illinois and municipalities in the vicinity of such race

tracks; and

WHEREAS, There has occurred a drop in revenues to the State of Illinois; therefore, be it

RESOLVED, BY THE SENATE OF THE SEVENTY-NINTH GENERAL ASSEMBLY OF THE STATE OF ILLINOIS, that the Illinois Legislative Investigating Commission is directed to investigate such messenger services and any other activity, and their legality together with any fiscal impact on the revenues of State and Local Governments of such messenger services or other activities; and be it further

RESOLVED, That the Illinois Legislative Investigating Commission report the results of its investigations together with any recommendation or proposed legislation to the Illinois General Assembly no later than February 15, 1977; and be it further

RESOLVED, That a copy of this preamble and resolution be transmitted forthwith to the Illinois Legislative Investigating Commission to the end that this investigation may begin forthwith."

We do not understand plaintiffs to contend that the Commission's report is not a public record, and we think it clearly is. (See Ill. Rev. Stat. 1977, ch. 116, par. 43.103.) Judicial notice may be taken of such public records. (*Gadlin v. Auditor of Public Accounts* (1953), 414 Ill. 89, 94.) Additionally, in *Moran v. Bowley* (1932), 347 Ill. 148, this court held that legislative debates may be considered to determine "the history of the times or of the evil which the legislation was intended to remedy." (347 Ill. 148, 155.) Similarly, the Legislative Investigating Commission Report is informative of the circumstances and problems which prompted the General Assembly to exercise its police power and adopt the challenged statute. Accordingly, the motion to strike the Attorney General's brief, or the references therein to the report, is denied.

At the time of the report, in March 1977, there were nearly 400 racetrack-messenger services operating in the Chicago area. Such services are operated ostensibly as follows. At locations away from the track and convenient

to their patrons, plaintiffs accept money from bettors who direct plaintiffs to purchase a certain ticket in the parimutuel pool at an area racetrack. The bettor is charged 10% of the cost of the ticket for this service. Plaintiffs then take the bettor's money to the track and buy the tickets which were ordered. If the ticket wins, plaintiffs return either the cash payout or the winning ticket to the bettor.

It would seem that plaintiffs' activities, as outlined above, might well be considered unlawful under the gambling provisions of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 28—1 *et seq.*) as well as the Horse Racing Act of 1975, which does not permit any parimutuel or certificate wagering except as provided therein. Section 26 provides:

> "(a) Any organization licensee conducting a horse race meeting may provide places in the race meeting grounds or enclosure and may conduct and supervise therein the pari-mutuel or certificate system of wagering by patrons on the horse races conducted by such organization licensee at such meeting. ***
>
> (b) No other place or method of betting, pool making, wagering or gambling shall be used or permitted by the organization licensee, nor shall the pari-mutuel or certificate system of wagering be conducted on any races except horse races at the race track where such pari-mutuel or certificate system of wagering is conducted."
> (Ill. Rev. Stat. 1977, ch. 8, par. 37—26.)

Indeed the original complaint in this cause sought to enjoin prosecution of pending and threatened criminal gambling charges and a declaratory judgment that plaintiffs' messenger services violated no law. Prior to resolution of those issues, however, the General Assembly enacted the amendment here challenged, and plaintiffs' complaint was amended to include a count asserting the invalidity of the amendment, which provides as follows:

> "(a) No person shall, for a fee, directly or indirectly, accept anything of value from another to be transmitted

or delivered for wager in any pari-mutuel or certificate system of wagering on horse races. Nothing in this Section prohibits wagering transactions authorized under this Act.

(b) Any person who violates this Section is guilty of a Class 4 felony." Ill. Rev. Stat. 1977, ch. 8, par. 37–39.1.

We hold that this statute violates no constitutional right of plaintiffs and is clearly within the police power of the legislature.

It is undisputed that gambling is an activity which is subject to regulation or to complete prohibition. (*Booth v. People* (1900), 186 Ill. 43, *aff'd* (1902), 184 U.S. 425, 46 L. Ed. 623, 22 S. Ct. 425; *Pelouze v. Slaughter* (1909), 241 Ill. 215.) Although plaintiffs and the appellate court assert that regulation is more appropriate than prohibition, it is not the function of the judiciary to pass upon the wisdom of legislative action. (*Sullivan v. Midlothian Park District* (1972), 51 Ill. 2d 274, 279.) Both houses of the General Assembly passed this amendment unanimously after the Illinois Legislative Investigating Commission reported a long list of serious and widespread problems with the messenger services, including booking of bets without buying the corresponding parimutuel tickets, failure to pay off winners, involvement of organized crime, and a reduction in track attendance and betting with a corresponding loss of local and State revenue. "To be a valid exercise of the police power, the enactment of the legislature must bear a reasonable relation to the public interest sought to be protected, and the means adopted must be a reasonable method to accomplish such objective. [Citations.] " (*Sherman-Reynolds, Inc. v. Mahin* (1970), 47 Ill. 2d 323, 327.) In view of the reported problems, it cannot fairly be said that the legislature acted unreasonably in prohibiting the racetrack-messenger services from charging a fee rather than attempting to regulate those activities.

Plaintiffs contend that the business of delivering money and a message indicating what is to be done with the money is not immoral in itself but is an "innocent and harmless" activity the prohibition of which is an unreasonable infringement of their right to conduct a legitimate business. We disagree.

"A calling may not in itself be immoral, and yet the tendency of what is generally or ordinarily or often done in pursuing that calling may be towards that which is admittedly immoral or pernicious. If, looking at all the circumstances that attend, or which may ordinarily attend, the pursuit of a particular calling, the State thinks that certain admitted evils cannot be successfully reached unless that calling be actually prohibited, the courts cannot interfere, unless, looking through mere forms and at the substance of the matter, they can say that the statute enacted professedly to protect the public morals has no real or substantial relation to that object, but is a clear, unmistakable infringement of rights secured by the fundamental law." (*Booth v. Illinois* (1902), 184 U.S. 425, 429, 46 L. Ed. 623, 626, 22 S. Ct. 425, 427.) Running bets is not a right secured by fundamental law irrespective of whether it is a violation of the Criminal Code.

As we noted earlier, the report of the Legislative Investigating Commission indicated that many of the messenger services book some of the bets themselves or book them with an illegal wire room, causing a substantial decrease in the total bets handled at the tracks and a corresponding loss of privilege-tax revenue. In addition the State suffers from the activities of those messenger services which actually take the bets to the track, for bettors need no longer attend the track in order to wager. Not only does admissions-tax revenue decline, but there is a reduction in the total bets and the tax revenue because, the report indicates, winning bettors, not being present at the

track, cannot wager their winnings as many would otherwise do. These problems alone justify the legislative action here challenged since it is clear that the State may utilize its police power to protect its sources of revenue and assure collection of taxes. *Sherman-Reynolds, Inc. v. Mahin* (1970), 47 Ill. 2d 323.

Even if racetrack-messenger services were operated without a hint of impropriety and even if we were to accept the doubtful proposition that these services do not constitute gambling itself, it is obvious that plaintiffs' business is completely intertwined with gambling and could not exist without it. As such, plaintiffs' business is within the State's plenary police power to regulate gaming activity. It is well within the authority of the State of Illinois to limit gambling on horse races to those who are at the track betting for themselves or betting for others only as a courtesy and not for a fee. In essence, this statute is part of the State's regulatory plan for limited gambling, and we find nothing in the Illinois or Federal constitutions which prevents its enactment or enforcement of such a statute.

The judgment of the appellate court is reversed, and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*