(No. 76179.

HERMITAGE CORPORATION *et al.*, Appellants, v. CONTRACTORS ADJUSTMENT COMPANY *et al.*, Appellees.

*Opinion filed May 18, 1995.*

FREEMAN, J., joined by BILANDIC, C.J., dissenting.

Harold I. Levine, of Chicago, for appellants.

Jerry A. Fogelman, of Nigro & Westfall, P.C., of Glendale Heights, for appellees.

JUSTICE NICKELS delivered the opinion of the court:

In this appeal, we are asked to decide whether several statutes of limitations should be tolled by application of the discovery rule. On January 9, 1991, plaintiffs, Hermitage Corporation and Robert Racky, filed a four-count complaint in the circuit court of Cook County against defendants, Contractors Adjustment Company and George Strickland. In the complaint, plaintiffs alleged negligence (count I), negligent and unauthorized practice of law (count II), consumer fraud (count III), and breach of warranty (count IV), arising from defendants' preparation of a mechanic's lien. Defendants filed a motion to dismiss all four counts pursuant to section 2—619(a)(5) of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—619(a)(5)), arguing that all four counts were barred by the pertinent statutes of limitations. The circuit court denied the motion but certified the questions for interlocutory appeal. (134 Ill. 2d R. 308.) The appellate court granted leave to appeal and reversed, finding that all counts in the complaint were barred. The appellate court issued a certificate of importance, pursuant to Supreme Court Rule 316 (134 Ill. 2d R. 316).

## BACKGROUND

This action arises from the allegedly improper preparation of a mechanic's lien. Plaintiffs in this action are Hermitage Corporation, a plumbing contractor, and Robert Racky, its principal stockholder. Defendants are Contractors Adjustment Company, which is in the business of recording liens and protecting lien rights, and George Strickland, the company's owner. According to

the complaint, plaintiffs performed plumbing construction work on a multiple-unit condominium building. Plaintiffs then allegedly asked defendants, who are not attorneys, to prepare and record a mechanic's lien against the property on plaintiffs' behalf. Defendants recorded a lien against the property on January 29, 1985.

Subsequently, plaintiffs sought to enforce this mechanic's lien in a foreclosure suit, seeking a total of $93,427.18. On July 16, 1987, however, the circuit court entered an order reducing the lien to $17,332. Plaintiffs filed a motion to reconsider the reduction of the mechanic's lien, but this motion was denied on March 16, 1989.

On January 9, 1991, plaintiffs filed the complaint in this case. In the complaint, plaintiffs allege that they received only $17,332 in the earlier foreclosure suit because defendants improperly prepared the lien. Specifically, as alleged in the complaint, plaintiffs performed plumbing work on each individual unit in a 72-unit condominium building. In preparing the mechanic's lien, defendants were required to allocate the lien amount among the individual units in the condominium but failed to do so. Defendants failed to indicate the amount of work performed on each unit and the time period during which the work was performed. Because of this failure to allocate, plaintiffs did not receive the face value of the lien, which represented the value of the work actually performed. Plaintiffs also allege in the complaint that the negligence, negligent and unauthorized practice of law, and breach of warranty counts accrued on March 16, 1989, when the motion for reconsideration in the earlier foreclosure suit was denied. In response, defendants filed a motion to dismiss each count based on the applicable statutes of limitations. In the motion to dismiss, defendants contend that all counts accrued on January 29, 1985, the date the mechanic's lien was recorded.

The parties agree as to the pertinent statute of limitations for each count. Counts I, II, and IV, alleging negligence, negligent and unauthorized practice of law, and breach of warranty, arise from an oral contract for services, and a five-year statute of limitations applies to these counts. (See Ill. Rev. Stat. 1989, ch. 110, par. 13—205.) Count III alleges consumer fraud, and a three-year statute of limitations applies to this count. (See Ill. Rev. Stat. 1989, ch. 121$^1$/2, par. 270a(e).) Although the parties agree as to the pertinent statutes of limitations, they do not agree as to when these limitations periods commence.

After a hearing on the motion to dismiss, the circuit court denied the motion but certified three questions for interlocutory appeal. The appellate court was asked to determine whether the statute of limitations for each count commenced on: (1) January 29, 1985, when the mechanic's lien was recorded; (2) July 16, 1987, when the mechanic's lien was reduced as a part of the foreclosure action; or (3) March 16, 1989, when the motion to reconsider in the earlier foreclosure suit was denied. The appellate court found that each statute of limitations began to run on January 29, 1985, when the mechanic's lien was recorded. Because plaintiffs did not file the complaint until 1991, the appellate court held that each count was barred.

## I. The Discovery Rule

On appeal, plaintiffs argue that they were unaware the mechanic's lien was defective in 1985, when the lien was recorded. Plaintiffs contend that they did not become aware of a defect in the lien until they tried to enforce the lien in court. Plaintiffs therefore argue that this court should apply the discovery rule to delay the commencement date of the statutes of limitations.

In contrast, defendants argue that counts I and II (negligence and unauthorized practice of law) involve torts arising from contract, and such actions ordinarily

accrue when the contract is breached. According to defendants, the contract in this case was allegedly breached in January 1985, when the lien was prepared and recorded. Defendants also contend that the acts and alleged breach of contract supporting counts III and IV (consumer fraud and breach of warranty) occurred in January 1985, again when the lien was prepared and recorded, and the statute of limitations should start to run from that time. Defendants argue that the discovery rule should not be applied to these types of actions.

We note that the limitations periods for tort and contract actions traditionally have been treated differently. For most torts, the cause of action usually accrues when the plaintiff suffers injury. (*West American Insurance Co. v. Sal E. Lobianco & Son Co.* (1977), 69 Ill. 2d 126, 129-30; see *Cassidy v. Derek Bryant Insurance Brokers, Ltd.* (1993), 244 Ill. App. 3d 1054, 1064.) For contract actions and torts arising out of contractual relationships, though, the cause of action ordinarily accrues at the time of the breach of contract, not when a party sustains damages. (*Lobianco*, 69 Ill. 2d at 132.) The reason for this distinction is the concern that plaintiffs will delay bringing suit after a contract is breached in order to increase damages. *Lobianco*, 69 Ill. 2d at 132.

Literal application of the statute of limitations, however, sometimes produced harsh results, and in response, the discovery rule was developed. When the discovery rule is applied, it "delays the commencement of the relevant statute of limitations until the plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused." (*Jackson Jordan, Inc. v. Leydig, Voit & Mayer* (1994), 158 Ill. 2d 240, 249.) This rule developed to avoid mechanical application of a statute of limitations in situations where an individual would be barred from

suit before he was aware that he was injured. This court first applied the rule in *Rozny v. Marnul* (1969), 43 Ill. 2d 54, and discussed the circumstances in which the rule should be applied:

> "The basic problem is one of balancing the increase in difficulty of proof which accompanies the passage of time against the hardship to the plaintiff who neither knows nor should have known of the existence of his right to sue. There are some actions in which the passage of time, from the instant when the facts giving rise to liability occurred, so greatly increases the problems of proof that it has been deemed necessary to bar plaintiffs who had not become aware of their rights of action within the statutory period as measured from the time such facts occurred. [Citations.] But where the passage of time does little to increase the problems of proof, the ends of justice are served by permitting plaintiff to sue within the statutory period computed from the time at which he knew or should have known of the existence of the right to sue. [Citations.]" *Rozny*, 43 Ill. 2d at 70.

Courts have applied the discovery rule on a case-by-case basis, weighing the relative hardships of applying the rule to both plaintiffs and defendants. The discovery rule has also been incorporated in several statutes of limitations (see, *e.g.*, Ill. Rev. Stat. 1991, ch. 110, par. 13—212 (medical malpractice); par. 13—213 (product liability)) and is generally treated the same whether created by common law or by statute. The common law discovery rule, however, will not be applied where there is a contrary indication of legislative intent (*Lipsey v. Michael Reese Hospital* (1970), 46 Ill. 2d 32, 38-40), such as a statute of repose, which places an absolute outer time limit on when an action can be brought. The pertinent statutes of limitations in this case do not contain such an outside limit.

Since *Rozny*, Illinois courts have applied the discovery rule in a wide variety of actions to postpone the running of the statute of limitations. (*Knox College v.*

*Celotex Corp.* (1981), 88 Ill. 2d 407, 414; *Witherell v. Weimer* (1981), 85 Ill. 2d 146, 154-55.) This court has applied the discovery rule to several actions, involving the five-year limitations period of section 13—205, that could be characterized as torts arising from contract. (*Knox*, 88 Ill. 2d 407 (tortious misrepresentation and fraud arising from a roofing contract); *Jackson Jordan*, 158 Ill. 2d 240 (legal malpractice arising from an attorney-client contract); *Superior Bank FSB v. Golding* (1992), 152 Ill. 2d 480 (misrepresentation and negligence arising in connection with a commercial mortgage loan).) We also note that the appellate court has applied the discovery rule to consumer fraud actions. See *Bradley v. Alpine Construction Co.* (1991), 224 Ill. App. 3d 432; *Sommer v. United Savings Life Insurance Co.* (1984), 128 Ill. App. 3d 808.

In these cases, the courts have been more concerned with whether the underlying facts support application of the discovery rule than how the action was characterized. An injured party may be unaware of an injury and its wrongful cause whether the action is deemed to involve tort, tort arising from contract, or other breach of contractual duty. (See *Cassidy*, 244 Ill. App. 3d at 1064; *Commonwealth Edison Co. v. Encompas, Inc.* (1987), 158 Ill. App. 3d 852, 856-58.) The reasons behind the discovery rule may support application regardless of how an action is characterized.

In this case, both parties agree that plaintiffs were, in fact, unaware of the alleged defect in the mechanic's lien in 1985, when the lien was prepared and recorded. Plaintiffs' failure to be aware of an alleged defect is understandable given the technical and complex nature of Illinois law regarding mechanics' liens. (See Ill. Rev. Stat. 1989, ch. 82, par. 1 *et seq.*) Plaintiffs, as laymen, could not be expected to identify defects in a mechanic's lien that would lead to a substantial reduction in the

lien. Plaintiffs would have no reason to know that the lien was improperly prepared until they actually sought to enforce the lien. Plaintiffs would have no reason to know that they were injured or that this injury was wrongfully caused until they attempted to enforce the mechanic's lien. Defendants have not suggested that problems of proof have increased significantly because of the passage of time.

Defendants argue that, even if the discovery rule may be applied generally to these types of actions, the rule should not be applied in this instance. Defendants argue that plaintiffs' injury was known to plaintiffs in 1987, when the circuit court reduced the mechanic's lien. According to defendants, if the statutes of limitations had commenced when the lien was recorded in 1985, the statutes would have run in 1990 on counts I, II, and IV, and in 1988 on count III. Thus, defendants argue, when plaintiffs became aware of their injury in 1987, plaintiffs still had $2^1/2$ years remaining in which to file three of the counts and one-half of a year remaining on the consumer fraud count. Defendants argue that the discovery rule does not apply when an injured party has a reasonable period of time remaining in the limitations period, as measured from the time of the breach or act causing injury, within which to file a complaint (the "reasonable time" rule).

We note that a split exists in the appellate court on this issue. Several panels have agreed with defendants' "reasonable time" rule and held that the discovery rule applies only when discovery occurs after the statute of limitations has run or has nearly run, as measured from the time of breach or act causing injury. (See, *e.g.*, *Van Gessel v. Folds* (1991), 210 Ill. App. 3d 403, 407-08; *Dolce v. Gamberdino* (1978), 60 Ill. App. 3d 124, 127-29.) In *Dolce*, 60 Ill. App. 3d at 128, the appellate court stated:

"The discovery rule is the exception to the traditional rules, to be applied only when the discovery occurs after

the statute of limitations has run or when discovery occurs at a time so near the running that the action, for all practical reasons, has been barred before a party has learned of the accrual."

In the instant case, the appellate court agreed with these decisions and therefore found that the discovery rule did not apply.

Other panels, however, have held that the discovery rule may be applied regardless of when discovery occurs. (See, *e.g.*, *Garcia v. Pinto* (1993), 258 Ill. App. 3d 22, 23-26; *Tucek v. Grant* (1984), 129 Ill. App. 3d 236, 240-42.) These decisions interpret the discovery rule "not so much as an extension of period of time to file, but rather as a rule which determines when the statute should begin to run." *Coleman v. Hinsdale Emergency Medical Corp.* (1982), 108 Ill. App. 3d 525, 532.

In resolving this split, we first examine past decisions of this court. In past cases involving the discovery rule, this court has consistently stated that "[t]he discovery rule *delays the commencement* of the relevant statute of limitations until the plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused." (Emphasis added.) (*Jackson Jordan,* 158 Ill. 2d at 249; see also *Superior Bank,* 152 Ill. 2d at 488-89; *Nolan v. Johns-Manville Asbestos* (1981), 85 Ill. 2d 161, 171; *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.* (1975), 61 Ill. 2d 129, 135; *Lipsey,* 46 Ill. 2d at 40; *Rozny,* 43 Ill. 2d at 70.) This court has also stated that "[t]he effect of the discovery rule is to *postpone the starting* of the period of limitations." (Emphasis added.) (*Knox,* 88 Ill. 2d at 414; see also *Witherell,* 85 Ill. 2d at 154 (date of discovery is "triggering" date for statute of limitations).) These past decisions "have not focused on the time left between the discovery of a cause of action and the termination of the statute of limitations from the beginning of the act but instead have been concerned with

the moment of commencement of the running of the statute of limitations." (*Garcia*, 258 Ill. App. 3d at 25.) In several of these cases, this court has not applied a "reasonable time" rule even though discovery may have occurred before the statutory period ended, as measured from the time of the breach or act causing injury. See *Knox*, 88 Ill. 2d 407; *Superior Bank*, 152 Ill. 2d 480.

Second and more significantly, this court has already considered this issue in a similar context. In *Sharpe v. Jackson Park Hospital* (1982), 92 Ill. 2d 232, this court was required to apply a medical malpractice statute containing a two-year discovery rule. In *Sharpe*, as in this case, the court was asked to apply the "reasonable time" rule. Specifically, the court was asked to determine "whether, when a plaintiff knows of his injury within two years of the act or omission which caused his injury, the limitation period provided in [the medical malpractice statute] commences to run from the date when he knew of his injury or the date on which the alleged malpractice occurred." (*Sharpe*, 92 Ill. 2d at 233-34.) The court held that the limitations period commenced from the date the plaintiff knew or should have known of the injury, regardless of whether he became aware of the injury within two years of the date on which it occurred. *Sharpe*, 92 Ill. 2d at 235.

Defendants argue that this court applied the "reasonable time" rule in *Anderson v. Wagner* (1979), 79 Ill. 2d 295, a case involving the fraudulent concealment statute. (Ill. Rev. Stat. 1977, ch. 83, par. 23.) This statute provides a five-year extension to a statute of limitations if an individual fraudulently conceals a cause of action. Defendants, however, fail to recognize that the *Sharpe* court considered the applicability of *Anderson* to the discovery rule and declined to apply *Anderson*. (*Sharpe*, 92 Ill. 2d at 234-35; see also *Hale v. Murphy* (1987), 157 Ill. App. 3d 531, 535-36.) In *Sharpe*, the court emphasized

that the statute of limitations started to run on the date of discovery and provided the full two-year statutory period from that date. (*Sharpe*, 92 Ill. 2d at 235; see also *Highsmith v. Chrysler Credit Corp.* (1994), 18 F.3d 434 (finding *Anderson* inapplicable to consumer fraud action involving the discovery rule); *Midland Management Corp. v. Computer Consoles Inc.* (1993), 837 F. Supp. 886 (same).) Accordingly, because this case does not involve a fraudulent concealment issue that might extend the statute of limitations, we do not address *Anderson*.

Finally, we note that the reasoning of *Dolce* and the "reasonable time" rule have been criticized. In *Bonanno v. Potthoff* (1981), 527 F. Supp. 561, the court stated that the *Dolce* rule would lead to some bizarre and unfair results. The court gave a specific example to illustrate this point:

> "Suppose the 'so near' time for discovery is (say) four months before the statute of limitations would have run. *Dolce* would then produce the bizarre result that a plaintiff who discovered a cause of action four years and seven months after it arose would have *five months* in which to bring suit, whereas the plaintiff who made the discovery two months later would have *five years* to do so. By contrast the uniform result under all the other case law would give every plaintiff the same five-year period after his claim had been discovered." (Emphasis in original.) (*Bonanno*, 527 F. Supp. at 565 n.8.)

Another court noted, in the context of consumer fraud, that "[t]he absurdity of the exception is clear. Its only effect is to penalize plaintiffs who discover their *** cause of action sooner rather than later." *Midland*, 837 F. Supp. at 887; see also *Highsmith*, 18 F.3d at 441-42 (characterizing the "reasonable time" rule as "illogical").

We agree with this reasoning and decline to adopt the "reasonable time" rule. Otherwise, the amount of time within which an injured party could sue would depend on the fortuity of the date of discovery. We note

also that adopting a "reasonable time" rule would lead to a lack of certainty and increased litigation concerning what constitutes a reasonable time to file suit.

## II. Application of the Discovery Rule

We now apply the foregoing principles to the facts of this case. The complaint contains two dates on which plaintiffs were allegedly aware of the defect in the mechanic's lien: (1) July 16, 1987, when the circuit court first entered an order reducing the mechanic's lien; and (2) March 16, 1989, when the circuit court denied a motion to reconsider the reduction. We note that, if the statutes of limitations commenced in 1987, count III alleging consumer fraud will be barred as untimely. The statute of limitations for consumer fraud is three years, and the complaint in this action was filed in 1991. On the other hand, if the statutes of limitations commenced in 1989, none of the four counts are barred.

Plaintiffs and defendants do not dispute that plaintiffs were aware of the possibility that they had been wrongfully injured in 1987. Plaintiffs and defendants agree that plaintiffs were on notice of the alleged defect in the mechanic's lien when the circuit court reduced the mechanic's lien. For the purpose of the motion to dismiss, defendants do not argue that plaintiffs became aware of the defect in the lien before 1987, when the circuit court reduced the lien. Plaintiffs, however, argue that they could not be certain that they were injured until 1989, when their motion for reconsideration was denied. Alternatively, plaintiffs argue that determining whether to apply the discovery rule presents a factual inquiry, and this factual inquiry should not be resolved by a motion to dismiss under section 2—619 in this case.

Under section 2—619(a)(5), a defendant may raise a statute of limitations issue in a motion to dismiss. When a defendant does so, the plaintiff must provide enough facts to avoid application of the statute of limitations.

(See *Ruklick v. Julius Schmid, Inc.* (1988), 169 Ill. App. 3d 1098, 1107-08.) When a plaintiff uses the discovery rule to delay commencement of the statute of limitations, the plaintiff has the burden of proving the date of discovery. (See *Kirby v. Jarrett* (1989), 190 Ill. App. 3d 8, 12; *Ruklick*, 169 Ill. App. 3d at 1107-08.) In the complaint in this case, plaintiff pleaded the date of discovery as March 16, 1989.

When a defendant makes a motion to dismiss under section 2—619, all well-pleaded facts and reasonable inferences are accepted as true for the purpose of the motion. (*Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 505.) Conclusions of law, however, are not accepted as true. (*Burdinie*, 139 Ill. 2d at 505.) In this case, based solely on the complaint, the parties contest the legal effect of the circuit court's rulings in the foreclosure suit. We therefore accept plaintiffs' statement that the circuit court denied the motion for reconsideration on March 16, 1989, but we do not accept plaintiffs' legal conclusion that this date must be the discovery date.

In the context of the motion to dismiss, plaintiffs and defendants have no factual dispute concerning what happened on the dates contained in the complaint. For the purpose of this motion, defendants accept the facts stated in the complaint. In addition, plaintiffs have had the opportunity to raise other possible dates as to when the injury was discovered but have not done so. The facts are undisputed and we therefore determine this question as a matter of law.

In applying the discovery rule, this court has stated:

"We wish to emphasize that the rule we announce is not the same as a rule which states that a cause of action accrues when a person knows or should know of both the injury and the defendants' negligent conduct. Not only is such a standard beyond the comprehension of the ordinary lay person to recognize, but it assumes a conclusion which

must properly await legal determination. [Citation.] Moreover, if knowledge of negligent conduct were the standard, a party could wait to bring an action far beyond a reasonable time when sufficient notice has been received of a possible invasion of one's legally protected interests. ***

We hold, therefore, that when a party knows or reasonably should know both that an injury has occurred and that it was wrongfully caused, the statute begins to run and the party is under an obligation to inquire further to determine whether an actionable wrong was committed. In that way, an injured person is not held to a standard of knowing the inherently unknowable [citation], yet once it reasonably appears that an injury was wrongfully caused, the party may not slumber on his rights." (*Nolan*, 85 Ill. 2d at 170-71.)

Again, in *Knox*, 88 Ill. 2d at 416, this court stated: "At some point the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved."

Applying this reasoning, we find that plaintiffs were aware that an injury occurred and that the injury was wrongfully caused in 1987, when their lien was substantially reduced. Plaintiffs were aware of the possible defect in the mechanic's lien in 1987 and were aware that the lien may have been improperly prepared. Plaintiffs were therefore required "to inquire further to determine whether an actionable wrong was committed." (*Nolan*, 85 Ill. 2d at 171.) Although the circuit court could have reconsidered its decision in 1989, plaintiffs were on notice by this time that they had a problem with the mechanic's lien. (See *Zupan v. Berman* (1986), 142 Ill. App. 3d 396 (statute of limitations in legal malpractice action started to run from the date of judgment, not from the denial of the post-trial motions); *Belden v. Emmerman* (1990), 203 Ill. App. 3d 265 (statute of limitations in legal malpractice action started to

run when the circuit court entered the order that was the subject of the legal malpractice action, not when the circuit court declined to vacate the order or thereafter).) Otherwise, the statute of limitations could be postponed indefinitely until all avenues of appeal in the earlier suit were exhausted.

Accordingly, the statutes of limitations on the four counts in the complaint commenced on July 16, 1987, when the circuit court granted partial summary judgment and reduced the mechanic's lien. The complaint in this action was filed on January 9, 1991. Because count III alleging consumer fraud was not timely, that count must be dismissed. The other three counts, however, were filed in a timely manner. For the foregoing reasons, the judgment of the appellate court is affirmed in part and reversed in part. The judgment of the circuit court is affirmed in part and reversed in part, and the cause is remanded to the circuit court for further proceedings.

*Appellate court affirmed in part*
*and reversed in part;*
*circuit court affirmed in part*
*and reversed in part;*
*cause remanded.*

JUSTICE FREEMAN, dissenting:

The court's decision today considerably expands the discovery rule in Illinois. The rule now excuses ignorance of law in litigation against nonattorneys. Were Contractors Adjustment Company charged with a duty to impart legal expertise, a foundation for the discovery rule would exist. But the reason for the rule's operation in such a case is absent here.

A nonattorney who undertakes, pursuant to a simple personal service contract, to claim a lien for another does not, under Illinois law, owe duties akin to those owed by an attorney. Such duties explain the discovery rule's operation respecting time-lapsed claims like those

Hermitage Corporation principally alleges. In the absence of such duties, statutory time bars must be honored. Hermitage Corporation should bear the consequence of not appreciating the legal inadequacy of the lien claim as of the time it was filed.

For those reasons, I dissent.

The discovery rule has, of course, been applied to "a broad spectrum" of claims to avoid time bars where plaintiffs neither knew nor should have known of time-triggering injuries. (*Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 414; see 166 Ill. 2d at 78-79.) But different reasons explain the rule's operation with regard to different types of claims. To appreciate why the discovery rule applies to certain claims is to recognize when a statute of limitations must be honored where the reason for the rule is absent. That point is crucial, for the discovery rule runs counter to one of the very reasons why statutes of limitations exist. The reason: "to discourage delay in the bringing of claims." See *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.* (1975), 61 Ill. 2d 129, 132.

As to any particular claim, operation of a time bar relates to protection of evidence. (*Tom Olesker's Exciting World of Fashion, Inc.*, 61 Ill. 2d at 132.) The discovery rule is consistent with that purpose in excusing the bar where the passage of time has not affected the ability to prove the claim. (See *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 70.) But the discovery rule conflicts in every case with the additional (see *Sutton v. Mytich* (1990), 197 Ill. App. 3d 672, 677), prophylactic purpose of discouraging delay generally. Regard for that purpose calls for the rule's cautious and selective application. Curiously, the acknowledgment of that more general purpose is omitted from the majority's extended quotation from the passage in *Nolan v. Johns-Manville Asbestos* in which it appears. See 166 Ill. 2d at 85-86,

quoting *Nolan v. Johns-Manville Asbestos* (1981), 85 Ill. 2d 161, 171.

The discovery rule's operation is usually explained by the absence of means reasonably available to the plaintiff to know of the incidence of injury. That is the reason for the rule in the post-surgery-existence-of-foreign-objects-in-the-body line of cases from which the rule sprang in Illinois. (See *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 70-71; see, *e.g.*, *Anderson v. Wagner* (1979), 79 Ill. 2d 295.) The same reason explains, for the most part, the rule's operation in cases of misrepresentation and fraud. (See, *e.g.*, *Knox College*, 88 Ill. 2d 407.) And the same reason explains why the rule obtains in cases of incremental injuries, like those involving exposure to asbestos. See, *e.g.*, *Nolan*, 85 Ill. 2d 161.

But simply being dispossessed of means to know of the incidence of injury is not what explains the rule's operation in a case of legal malpractice, the type of claim analogous to the principal one made here.

The discovery rule is justified in a legal malpractice suit because of the special attorney-client relationship. (See *Neel v. Magana, Olney, Levy, Cathcart & Glefand* (1971), 6 Cal. 3d 176, 491 P.2d 421, 98 Cal. Rptr. 837; see also *Pioneer National Title Insurance Co. v. Sabo* (D. Del. 1977), 432 F. Supp. 76; see generally *Superior Bank FSB v. Golding* (1992), 152 Ill. 2d 480.) An attorney is charged with a duty "to use skill, prudence, and diligence" common in the legal profession. (*Neel*, 6 Cal. 3d at 188, 491 P.2d at 428, 98 Cal. Rptr. at 844.) Given that duty, the nonattorney is presumed unable to detect "misapplication" of legal expertise:

> "If [the client] must ascertain malpractice at the moment of its incidence, the client must hire a second professional to observe the work of the first, an expensive and impractical duplication, clearly destructive of the confidential relationship between the practitioner and his client." (*Neel*, 6 Cal. 3d at 188, 491 P.2d at 428, 98 Cal. Rptr. at 844.)

(See also *Sabo*, 432 F. Supp. at 81.) Therefore, the realized injury to the client, not the attorney's misapplication of expertise, marks the point in time for measuring compliance with a statute of limitations period.

That is not to say that the discovery rule displaces the notion that a person should be held to appreciate the meaning of a legal document he executes. (See Annot., 10 A.L.R.5th § 12 (1993).) When a document's meaning is plain and requires no legal explanation and the client is well educated and has had the opportunity to read what he signed, no action for malpractice lies. (See *Berman v. Rubin* (1976), 138 Ga. App. 849, 854, 227 S.E.2d 802, 806.) The discovery rule's operation is therefore negated. It is only when the document "requires substantive or procedural knowledge, is ambiguous, or is of certain application" that malpractice may exist and so invite application of the rule. See *Berman*, 138 Ga. App. at 854, 227 S.E.2d at 806.

Incidentally, our appellate court understands that the discovery rule does not operate when a document's meaning is unambiguous and appreciation of it requires no legal expertise. The issue arose in *Hannigan v. Country Mutual Insurance Co.* (1994), 264 Ill. App. 3d 336, 342, a case involving an insurance contract. The insured had sued her insurer for nonpayment of underinsurance coverage and refusal to arbitrate that claim. The policy required all claims for arbitration be made "within two years after the date of the accident." (Emphasis omitted.) (*Hannigan*, 264 Ill. App. 3d at 342.) The insured had learned of the tortfeasor's inadequate insurance coverage only after the two-year period had lapsed. Nevertheless, the discovery rule could not operate. The policy, the court noted, was clear. The insured had only two years from the date of an accident to demand arbitration. Thus, there was no need to determine when the insured "knew or should have

known of the existence of the right to sue." *Hannigan*, 264 Ill. App. 3d at 342.

That brings me to the lien claim filed in this case. I should note, first, that no copy of the document is found in the record. No copy of the document was attached as an exhibit to Hermitage Corporation's complaint, nor was a copy made a part of Contractors Adjustment Company's motion to dismiss. The lien claim is, however, a public record, having been filed in the Cook County recorder's office, and so judicial notice of it may be taken. See *Finish Line Express, Inc. v. City of Chicago* (1978), 72 Ill. 2d 131.

The notice of lien, not unlike the policy provision in *Hannigan*, is clear to anyone able to read standard English. The words used are simple and unambiguous. Correct syntax is employed. Rules of grammar and punctuation are followed.

The lien is stated in three pages. The first page specifies the type of work performed (plumbing), the date the work was completed (December 14, 1984), the total amount of the lien claimed ($92,850.08) and the general worksite (Sanctuary Condominiums). An incorporated "schedule" consisting of the remaining two pages provides further detail regarding the lien.

The "schedule" lists, by unit number, 74 condominiums in which the plumbing work was actually done. The unit numbers are listed in a left-hand vertical column, one unit per line. Corresponding with that list, a middle column sets out the date the plumbing work was performed. December 14, 1984, is represented as the date the work was completed for each unit. In a third, similarly corresponding right-hand column, the lien is apportioned in equal amounts of $1,238 to each unit.[1]

Unlike the insurance policy provision in *Hannigan*,

---

[1]There appears to be an error either in stating the total lien amount or in apportioning that amount to the 74 units. The

a substantive and procedural knowledge of the law of mechanics' liens is necessary to appreciate the lien claim here. The lien claim, though clearly stated, is insufficient under existing law to create the right it purports to establish.

The problem lies with the use of a so-called "blanket" lien for work performed under one contract on multiple parcels. The Mechanics Lien Act requires lien claims to be made within four months "after completion" of work. (Ill. Rev. Stat. 1991, ch. 82, par. 7.) It is likely that work performed on any one parcel will be performed more than four months prior to "completion" of work on all and so lien rights are jeopardized. (See *First Federal Savings & Loan Association v. Connelly* (1983), 97 Ill. 2d 242, 247-49.) Under *Schmidt v. Anderson* (1911), 253 Ill. 29, 33, the date work was performed on each parcel must be stated in order to enforce a lien where labor on any other was performed more than four months before the claim was filed.

The notice of lien prepared by Contractors Adjustment Company did not set out the dates the plumbing work was performed on each of the 74 condominium units. The consequence of that was realized on July 16, 1987, when the claim was judicially determined. But the injury was choate when the notice was filed on January 29, 1985.

---

amount apportioned ($1,238) multiplied by the number of units (74) does not equal the total lien amount claimed ($92,850 (rounding off to the nearest dollar)) but a lesser amount ($91,612). The Mechanics Lien Act specifically preserves claims with such defects. (See Ill. Rev. Stat. 1991, ch. 82, par. 7 (providing that no lien will "be defeated to the proper amount" because of an "error or overcharging" by the claimant unless fraud is present).) But were that not the case and the discovery rule somehow implicated, I suggest no basis would exist for its operation. A miscalculation appearing on the face of a notice of lien certainly needs no legal knowledge to appreciate.

It is enough for the majority to invoke the discovery rule that the law of mechanics' liens was too "technical and complex" for Hermitage Corporation to appreciate the injury at its incidence. (166 Ill. 2d at 79.) I do not dispute the "technical and complex" nature of the law of mechanics' liens. And I am well aware of the equity in allowing Hermitage Corporation the chance to hold Contractors Adjustment Company responsible for ineptitude in doing the very thing it held itself out as expert to do. I disagree with the court's decision because complexity of law—the mechanic's lien variety or any other—cannot be reason to ignore a statutory time bar for what is, in effect, a legal malpractice claim against a nonattorney.

There is an inherent problem in focusing on the "layman" status of Hermitage Corporation as rationale for the discovery rule's operation. (See 166 Ill. 2d at 79-80.) All nonattorneys are laymen as to matters requiring legal expertise. (See Webster's Third New International Dictionary 1281 (1993) (defining "layman" as "one not belonging to some particular profession or not expert in some branch of knowledge or art").) The complexity of law is beyond the ken of all laymen equally. That is the point of State licensure and regulation of the legal profession.

Contractors Adjustment Company may have held itself out as an expert in asserting claims under the Mechanics Lien Act. But, in fact, Contractors Adjustment Company was never anything but a layman. The majority is simply wrong to inject the issue of legal expertise into its analysis. Contractors Adjustment Company can be considered no more an expert regarding the Mechanics Lien Act than Hermitage Corporation. It therefore makes no sense to excuse Hermitage Corporation's failure to appreciate the facial defect of the lien claim in time to sue upon it. Excusing one

layman's tardy appreciation of injury because the law is too complex in favor of holding another layman responsible for injury arising from that complexity is entirely arbitrary.

The more far-reaching consequence of the court's decision is the elevation of a nonattorney's ignorance of law to the status of legal malpractice. The relationship between Hermitage Corporation and Contractors Adjustment Company arose from a simple personal service contract. No confidential relationship is alleged in the complaint. None could exist. Illinois law simply does not regard nonattorneys who file lien claims on behalf of others as owing any duty of confidentiality.

It is, again, regard for that duty that a time bar is excused in a negligence action against an attorney for services rendered a client, such as an effort to create lien rights. In a sense, the duty of confidentiality binds the client to the attorney. The discovery rule's operation reflects that notion.

The rule would permit a client to rely without reservation on the attorney's competency in creating lien rights. The confidential relationship ensures the client's reasonableness in doing so. If the client had to retain a second attorney to check the efficacy of the lien claim filed by the first, the initial confidential relationship would be undermined. But a personal service contract between a "client" and a nonattorney who undertakes the same task entails no duty of confidentiality which could be undermined.

Furthermore, by licensing attorneys and policing the profession, this State, explicitly and implicitly, justifies a client's reliance on an attorney's competence to create legal rights like liens. Not so with respect to the nonattorney who purports to do the same thing. The law does not hold the nonattorney to any standard of legal expertise. In contracting with a nonattorney for

services in creating a legal right such as a lien, the "client" is not similarly justified in freely relying on the nonattorney's competence. Unfortunately, that leaves the "client" at risk of not being able to appreciate, for himself, a legal injury arising from the "legal" services in time to hold the nonattorney responsible.

Such misfortune is not, however, reason enough to recognize a cause of action for legal malpractice against all nonattorneys whose contractual services are intended, but fail, to create legal rights. In roundabout fashion, that is precisely the effect of the court's application of the discovery rule today. I cannot agree with that result.

CHIEF JUSTICE BILANDIC joins in this dissent.