106 F.3d 403
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Paul E. MATTEUCCI, an individual, Plaintiff-Appellant,
v.
CHAIN DRUG MARKETING ASSOCIATION, a New York corporation,
Defendant-Appellee.
 No. 96-1596.
 United States Court of Appeals, Seventh Circuit.
 Argued Oct. 29, 1996.
Decided Jan. 2, 1997.
 
 Before CUMMINGS, COFFEY and DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 Plaintiff is a citizen of Montana and defendant is a Delaware corporation with its principal place of business in Deerfield, Illinois. According to the complaint, plaintiff was retained as defendant's president pursuant to an oral contract of employment reached on November 27, 1989. Plaintiff asserts that under the oral employment contract he was entitled to $195,000 per year plus fringe benefits, or a total of $255,000, the amount in controversy.
 
 
 2
 Plaintiff was employed from January 1 through May 18, 1990, as defendant's president. He was told that his compensation would be $195,000 per year plus additional benefits given chief executive officers. At the time plaintiff began serving as president, neither chairman James D. Evans nor plaintiff discussed the terms of a written employment agreement, severance pay or other termination benefits.
 
 
 3
 After commencing his employment, plaintiff prepared a hand-written draft employment agreement. After it was revised by his lawyer, plaintiff telephoned Evans about the draft and discussed a severance package. Paragraph 9 of plaintiff's draft provided for an unspecified severance allowance that was to be paid "on the effective date of termination" but, as shown in plaintiff's deposition, neither he nor Evans discussed any form of severance pay or termination benefits.
 
 
 4
 Evans never accepted plaintiff's draft. Since plaintiff had been a member of the executive committee of defendant when he was a board member and was a member of the executive committee again as defendant's president, he evidently understood that his draft would require the approval of the executive committee and then intended that he and Evans would sign the document. However, neither he nor any representative of defendant did so, nor was any written contract of employment executed by the parties.
 
 
 5
 On May 3, 1990, plaintiff wrote the members of the executive committee that he would greatly appreciate his employment being finalized as quickly as possible. However, he was discharged effective immediately on May 18, 1990, without his draft contract being approved by the executive committee or executed by him and Evans.
 
 
 6
 Plaintiff did not file this lawsuit until May 24, 1995, attaching the draft contract to his complaint. He alleged that his oral contract of employment required defendant to pay him the unspecified termination benefits set forth in paragraph 9 of his draft and that defendant breached the oral contract by not paying him the termination benefits set forth therein.
 
 
 7
 When plaintiff was discharged on May 18, the executive committee authorized President Evans to offer plaintiff three weeks' severance pay,[1] but plaintiff wrote a few weeks later that the minimum severance package that he would accept was payment of his salary for an additional three months although his draft contract would allegedly have required payment of a full year's salary plus additional benefits totaling approximately $255,000.
 
 Statute of Limitations Bar
 
 8
 The complaint was not filed until May 24, 1995, although plaintiff was discharged on May 18, 1990. In October 1995, defendant moved for summary judgment on the ground that the claim was barred by Illinois' five-year statute of limitations for unwritten contracts. 735 ILCS 5/13-205.[2] The magistrate judge accepted this ground and therefore granted summary judgment for defendant. We agree. Indeed plaintiff concedes that defendant never executed his proposed draft contract or any other employment contract and his complaint and brief admit that his claim arises from an oral contract (Complaint, par. 1; Br. at 4, 6).
 
 
 9
 If plaintiff had a claim for breach of paragraph 9 of his draft contract, it accrued on May 18, 1990, when he was discharged. Since his cause of action admittedly accrued on May 18, 1990, the Illinois statute of limitations barred it. To avoid this outcome, plaintiff argues that the commencement of the statute of limitations is delayed "until the plaintiff knows or reasonably should know that he has been injured and that his injury has been wrongfully caused." Hermitage Corp. v. Contractors Adjusting Co., 166 Ill.2d 72, 77, 651 N.E.2d 1132, 1135 (1995). However, plaintiff submitted no evidence making the discovery rule applicable. The record is clear that on May 18, 1990, the date of his termination, plaintiff knew that defendant had not paid him the $225,000 severance allowance allegedly provided for in paragraph 9, or any other severance allowance. Indeed, he admits that he knew on May 18 that defendant owed him severance benefits. During his deposition the following colloquy took place:
 
 
 10
 Q. On the day [May 18, 1990] that you were terminated as president of the Association, were you aware of the terms of paragraph 9 of the draft employment agreement[?]
 
 
 11
 A. Yes.
 
 
 12
 Q. And on the day that you were terminated, were you of the opinion that the Association owed you money under paragraph 9?
 
 
 13
 A. Yes.
 
 
 14
 Matteucci Dep. at 127.[3] Thus his cause of action accrued on that date. Knox College v. Celotex Corp., 88 Ill.2d 407, 416, 430 N.E.2d 976, 980-981 (1982). Furthermore, he admits that since the day he was terminated as president of defendant, he did not learn any facts supporting his claim for termination benefits under his proposed contract and that defendant did nothing to prevent or deter him from bringing a lawsuit. Matteucci Dep. at 127. Thus under these facts the conclusion is inescapable that his claim accrued on May 18, 1990. The only argument plaintiff makes as to why the discovery rule has any application in his case is that there were apparently some negotiations as to the amount of severance that defendant would pay him which took place after his May 18 termination.[4] However, the fact that negotiations may have been taking place does not support plaintiff's invocation of the discovery rule. To the contrary, the fact that the parties were negotiating reveals that plaintiff knew he was not going to be paid under the terms of the alleged draft contract. Although the doctrine of equitable estoppel may suspend the running of the limitations period during settlement discussions where one party to negotiations promises not to plead the statute of limitations pending settlement talks, see Singletary v. Continental Nat. Bank & Trust Co., 9 F.3d 1236, 1241 (7th Cir.1993), plaintiff does not suggest that any such representation was made in this case.
 
 
 15
 In sum, plaintiff learned on May 18, 1990, that defendant would not pay him the amount of the severance allowance supposedly provided in his draft contract, and did not file his lawsuit within the following five years as required by the Illinois statute of limitations.
 
 Lack of merits
 
 16
 Apart from the bar of the statute of limitations, it is uncontroverted that defendant's executive committee and president never approved plaintiff's proposed employment agreement, so that even on the merits plaintiff's claim for $255,000 in termination benefits lacks any merit. Summary judgment on that ground would also have been appropriate.
 
 Conclusion
 
 17
 Summary judgment for defendant is affirmed.
 
 
 
 [1]
 Evans stated during his deposition that he conveyed this offer to plaintiff when he terminated him. Plaintiff maintains that nothing was said during his termination conversation with Evans concerning whether defendant would pay him any severance. However, the only support in the record for this contention is plaintiff's statement that he could not recall Evans saying anything during that conversation other than that he was terminated. Plaintiff cannot create a genuine issue of material fact as to whether Evans informed him that defendant was only willing to pay him three weeks' severance pay through such testimony. See Unterreiner v. Volkswagen of America, Inc., 8 F.3d 1206, 1210-1211 (7th Cir.1993). In any event, this issue is not material because plaintiff admits that as of his phone conversation with Evans in which he was terminated, he believed that defendant owed him $255,000 severance pay under the draft agreement
 
 
 [2]
 Defendant had also submitted that the alleged oral contract was unenforceable under the statute of frauds and that it had never entered any contract to pay plaintiff termination benefits (Br. 6). These grounds were not reached by the magistrate judge. In this Court, defendant also submits that there was a lack of evidence of its acceptance of the proposed contract to pay severance benefits (Br. 16-23)
 
 
 [3]
 To avoid this fatal admission, plaintiff advances the argument that although he knew he was owed, he did not know he was not going to be paid. Perhaps in some contexts it is better to be owed than not paid; however, this distinction is completely unavailing in the present context wherein the critical date is that on which plaintiff knew that defendant had breached the purported agreement
 
 
 [4]
 The record reflects that one month after his termination, plaintiff sent a letter to Evans in which he offered to accept a severance package of three months' additional salary