# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 08-3600

IN RE:

    MARCHFIRST INCORPORATED,

*Debtor.*

APPEAL OF:

    CIT COMMUNICATIONS FINANCE
    CORPORATION, formerly known as
    NEWCOURT COMMUNICATIONS
    FINANCE CORPORATION.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08-cv-00121—**David H. Coar**, *Judge.*

ARGUED OCTOBER 26, 2009—DECIDED DECEMBER 21, 2009

Before BAUER and SYKES, *Circuit Judges,* and SIMON,
*District Judge.*\*

---

\* Hon. Philip P. Simon, District Judge for the Northern
District of Indiana, sitting by designation.

BAUER, *Circuit Judge.*   CIT Communications Finance Corporation leased phone equipment to marchFIRST, Inc. When marchFIRST filed for bankruptcy protection and failed to return the equipment, CIT eventually sought damages from Andrew Maxwell, the trustee in bankruptcy, for breach of fiduciary duty. The bankruptcy court dismissed the claims as barred by the statute of limitations. The district court affirmed. Finding that the five-year statute of limitations bars CIT's claims, we affirm.

## I. BACKGROUND

CIT began leasing telephone equipment to marchFIRST in 2000. On April 12, 2001, marchFIRST filed for bankruptcy in Delaware and CIT appeared as an interested party. The court-appointed trustee rejected all of marchFIRST's leases with CIT and received court permission to retain an auctioneer to assist in liquidating property held by marchFIRST. On July 10, the Delaware court transferred the case to the Bankruptcy Court for the Northern District of Illinois, which court appointed Andrew Maxwell as the successor trustee.

After Maxwell's appointment, CIT began seeking the return of its equipment. On July 20, CIT's attorney wrote Maxwell requesting the return of the equipment. According to CIT, Maxwell and his agents responded to the letter and the related attempts to recover the equipment by advising CIT to contact "different individuals," each of whom "stonewalled" CIT. Maxwell also missed an August 12, 2001 deadline for filing an inventory of CIT's property in the debtor's possession as required by Fed. R. Bankr. P. 2015(a)(1) and 11 U.S.C. § 704(a)(2).

On November 2, 2001, Maxwell filed a Statement of Financial Affairs in the bankruptcy court denying that marchFIRST held or controlled any of CIT's property. Nearly three months later, on January 31, 2002, the bankruptcy court gave Maxwell permission to re-employ the auctioneer in order to continue liquidating equipment marchFIRST held at various locations. Nearly a year later, on December 12, 2002, CIT filed an amended administrative expense claim seeking the full value of its equipment. The claim asserted that Maxwell had breached his fiduciary duty but that CIT had not discovered the breach until sometime after October 11, 2001, the deadline for filing such claims in the bankruptcy court.

CIT filed its complaint in this case on May 7, 2007, four-and-a-half years after filing its amended administrative expense claim, and five years and nine months after it first wrote to Maxwell seeking the return of its equipment. CIT's complaint charged Maxwell with, among other things, breaching his fiduciary duty to CIT by ignoring requests to return the equipment, failing to safeguard the equipment, and improperly disposing of the equipment—all of which CIT claims were done outside the scope of his duties as trustee. The bankruptcy court dismissed the claims as barred by Illinois' five-year statute of limitations. CIT appealed the decision to the district court, which affirmed. CIT timely appealed.

## II. DISCUSSION

CIT argues that the statute of limitations should not bar it from pursuing its claim for breach of fiduciary duty,

even though it filed the claim nearly six years after it was first "stonewalled" by Maxwell and four-and-a-half years after it filed its amended administrative expense claim. Both parties agree that CIT's claims to recover personal property are governed by Illinois five-year statute of limitations, as interpreted by the Illinois Supreme Court. 735 Ill. Comp. Stat. 5/13-205. *See Commonwealth Ins. Co. v. Stone Container Corp.*, 323 F.3d 507, 509 (7th Cir. 2003). Because CIT filed its complaint on May 7, 2007, the claims for which it seeks relief must have accrued no earlier than May 7, 2002. We review de novo the district court's dismissal of CIT's claims as barred by the statute of limitations. *Dominguez v. Hendley*, 545 F.3d 585, 588 (7th Cir. 2008).

The disputed issue is when CIT's claims against Maxwell accrued and triggered the running of the limitations period. Illinois follows the general rule that tort claims arising from a contract accrue when the contract is breached, whereas most tort claims accrue when the plaintiff sustains an injury. *Hermitage Corp. v. Contractor's Adjustment Co.*, 651 N.E.2d 1132, 1135 (Ill. 199*5).* But courts also have a discovery rule to protect those who are unaware of their right to sue, "to encourage the trial of cases on their merits and avoid premature summary dismissals." *Superior Bank FSB v. Golding*, 605 N.E.2d 514, 518 (Ill. 1992). The discovery rule delays the accrual of claims until the plaintiff reasonably should know that he has been injured *and* that the injury was wrongfully caused. *Id.* A plaintiff's knowledge that his injury was wrongfully caused does not necessarily mean knowledge of actionable conduct. *Knox Coll. v. Celotex Corp.*, 430

N.E.2d 976, 980-81 (Ill. 1981). The cause of action accrues and the limitations period begins to run when "the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." *Id.* In addition, in Illinois, the party seeking to utilize the discovery rule bears the burden of proving the date of discovery. *Hermitage*, 651 N.E.2d at 1138.

In this case, CIT's claims accrued before May 7, 2002, and thus are barred by the statute of limitations. CIT maintains that, as trustee of the bankrupt marchFIRST estate, Maxwell breached the fiduciary duty he owed to marchFIRST's creditors. Maxwell accomplished this, according to CIT, by failing to inventory, return, and safeguard, (and eventually disposing of) CIT's equipment. However, all activity the complaint describes relating to CIT's efforts to recover its equipment and Maxwell's lack of response occurred during the summer and fall of 2001, over five years and six months prior to the date CIT filed its complaint. CIT first appeared in the bankruptcy proceeding as an interested party on April 23, 2001. In July 2001, CIT first asked for its phone system back in a letter to Maxwell. According to CIT, Maxwell responded to this and other such requests with "stonewalling." He also failed to file an inventory of the debtor's possessions as required by the Bankruptcy Code. Then, according to CIT, Maxwell "deliberately" filed a Statement of Financial Affairs in November 2001, "falsely represent[ing] that Debtors did not hold any property owned by" CIT. Hence, by November 2001, CIT

had appeared as a party to the bankruptcy and knew it was entitled to recover its equipment, but Maxwell refused to turn it over and even publicly denied possessing it. CIT reasonably should have known at that point that Maxwell had wrongfully disposed of its equipment or at least refused to cooperate in its return—either of which put CIT on notice of an injury and potential claims against Maxwell.

Even if, as CIT claims on appeal, Maxwell's conduct in breach of his duty continued after the May 7, 2002 trigger date, CIT's claims accrued and the limitations period commenced in November 2001, when it first was reasonably aware of its injury and its wrongful cause. Unlike tort claims involving an ongoing or continuing series of acts in which the limitations period does not run until the date when tortious acts cease, *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 85 (Ill. 2003), where the tort claims arise out of contract, the limitations period begins at the time of the breach or when the plaintiff reasonably should be aware of its injury and its wrongful cause. *Hermitage*, 651 N.E.2d at 1135. As discussed above, CIT knew of Maxwell's wrongful conduct in relation to its phone equipment during the summer and fall of 2001 and the statute of limitations commenced on that date.

CIT further argues that it was inappropriate to dismiss its claim on a Rule 12(b)(6) motion because the statute of limitations is an affirmative defense that should not be adjudicated on the pleadings. In ruling on Rule 12(b)(6) motions, the court must treat all well-pleaded allegations as true and draw all inferences in

favor of the non-moving party. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Under this standard, CIT says it is entitled to an inference that its claims did not accrue until December 2002, when it filed its amended administrative expense claim for the full cost of the equipment in bankruptcy court. This is the date when CIT says it became clear that it had a cause of action. But the true test under Illinois law is when CIT reasonably *should have* known it was injured by Maxwell's wrongful conduct. *See Knox Coll.*, 430 N.E.2d at 980 (citing *Nolan v. Johns-Manville Asbestos*, 421 N.E.2d 864 (Ill. 1981)). CIT's argument then, is that despite its repeated attempts to recover its equipment in the summer and fall of 2001 and Maxwell's refusal to cooperate, CIT was unaware of its injury and its cause until sometime after the May 7, 2002 triggering date for the statute of limitations, but before it amended its expense claim in the bankruptcy proceeding on December 12, 2002. This is where CIT pleads itself out of court. After *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), it is no longer sufficient for a complaint "to *avoid foreclosing* possible bases for relief." *E.E.O.C. v. Concentra Health Svcs., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007) (citing *Bell Atl.*, 550 U.S. at 560-63). The plaintiff must plead some facts that suggest a right to relief that is beyond the "speculative level." *Id.* By including in the complaint no triggering facts that occurred during this window of time, CIT's complaint establishes an impenetrable defense to its claims that would have to be contradicted for CIT to prevail on the merits. *See id*. It would be mere speculation to infer from the complaint that CIT discovered its claims between May 7, 2002

and December 12, 2002; the complaint is completely silent as to anything that happened during that period. Rather, the complaint alleges that Maxwell *failed* to inventory the equipment and publicly declared in the Statement of Financial Affairs that marchFIRST did not possess the equipment *before* that period. These events should have put CIT on notice that it had been injured—that Maxwell had either wrongfully disposed of the equipment or was less than truthful about its whereabouts. And as a sophisticated party appearing in the bankruptcy proceedings, CIT should have known that its injury was wrongfully caused. All of this occurred, at the very least, on or before November 8, 2001, more than five years and five months before CIT filed its complaint.

### III. CONCLUSION

CIT's claims accrued more than five years before it filed its complaint and its claims are barred by the five-year statute of limitations. We AFFIRM.