MONEY MARKET PAWN, INC., Plaintiff,

v.

Boone County Sheriff Duane WIRTH, et al., Defendant.

Case No. 13 C 50186.

United States District Court, N.D. Illinois.

Signed Jan. 17, 2014.

Mark Alan Rouleau, Law Office of Mark Rouleau, Rockford, IL, for Plaintiff.

Stephen E. Balogh, Adam Blaine Etchason Lied, Joel M.L. Huotari, Laura D. Mruk, Williams–McCarthy LLP, Rockford, IL, for Defendants.

## ORDER

FREDERICK J. KAPALA, District Judge.

Defendants' motion to dismiss [6] is granted in part and denied in part. Plain-

tiff's motion to strike [16] is granted. This case is remanded to the Circuit Court for the Seventeenth Judicial Circuit, Winnebago County, Illinois. The clerk is directed to transmit a copy of this order to the Circuit Clerk of Seventeenth Judicial Circuit, Winnebago County, Illinois. This case is closed.

## STATEMENT

In a 14–count complaint filed in the Circuit Court for the Seventeenth Judicial Circuit, Winnebago County, Illinois, plaintiff, Money Market Pawn, Inc., sued Boone County Sheriff Duane Wirth; Deputies Patrick Imrie and William Kaiser; and Boone County Assistant State's Attorney Salvatore Lopiccolo pursuant to 42 U.S.C. § 1983 alleging that defendants deprived it of property without due process of law in violation of the Fourteenth Amendment. Defendants removed the action to this court relying on federal question subject matter jurisdiction. *See* 28 U.S.C. § 1331. Before the court are defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and plaintiff's motion to strike a portion of defendants' reply memorandum. For the reasons that follow, the motion to dismiss is granted in part and denied in part. The motion to strike is conceded by defendants and is therefore granted.

## I. ALLEGATIONS

Robert Rutledge told Deputies Imrie and Kaiser that his son, Jeremy Hunt, stole his welder and chain saw and pawned the items with plaintiff.[1] Deputy Imrie knew that Rutledge was hesitant to have his son prosecuted for the theft. On October 8, 2012, the deputies went to plaintiff's pawn shop and demanded the release of the items. Plaintiff's principal and employee, Matthew Sigley, informed the deputies that they did not have the proper paperwork and asked them if they had made an arrest or if charges were being pressed. Sigley also told the deputies that he would be happy to place a police hold on the items until the deputies were certain that charges would be filed. The deputies refused to put a hold order on the items, said "we're taking the tools," and seized the items without producing an order or warrant. Instead, the deputies gave Sigley an evidence inventory and receipt for the items. Thereafter, Rutledge told the deputies that he did not want to follow through with charges against his son. After the items were seized, but before the items were released, Sigley telephoned Deputy Imrie and told him that Hunt had pawned the welder on three prior occasions such that Sigley had no reason to doubt that it belonged to Hunt; that Sigley was concerned that Rutledge and Hunt were working together to get the items back without repaying the loan; and that plaintiff still had a legal claim to the items and wanted them back if Hunt was not going to be prosecuted for the theft. Deputy Imrie told Sigley that he would speak with someone at the States Attorney's Office about plaintiff's legal interest in the items.

On October 9, 2012, Assistant States Attorney Lopiccolo advised Deputy Imrie that plaintiff's legal claim to the items did not supercede Rutledge's claim to the items and to release the items to Rutledge because charges were not being filed. After Deputy Imrie told Sigley what Lopic-

---

1. The Boone County Sheriff's Department Incident Report, attached to the complaint as Exhibit C, indicates that the value of these items was $600 each. Given the nature of the pawnbroker's business the court presumes that the loan made to Hunt was less than $1,200. In any event, plaintiff is out no more than $1,200, excluding the costs of bringing this action.

colo had said, Sigley called Lopiccolo who confirmed that he told the deputies to give the items to Rutledge. Without providing plaintiff with notice of a hearing regarding the disposition of the items, the deputies and Lopiccolo collectively transferred the items to Rutledge on October 22, 2012.

In Counts I–XII, plaintiff brings due process claims, willful and wanton due process claims, and claims for injunctive relief against Deputy Imrie, Deputy Kaiser, Assistant State's Attorney Lopiccolo, and Sheriff Wirth, respectively. In Counts XIII and XIV, plaintiff brings state-law claims for conversion and wilful conversion against Deputy Imrie.

## II. ANALYSIS

In evaluating a Rule 12(b)(6) motion to dismiss, the court must look to whether the complaint states a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). A court must accept as true all of the well plead allegations contained in the complaint and make reasonable inferences in favor of the non-moving party. *In re marchFIRST Inc.*, 589 F.3d 901, 904 (7th Cir.2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

Defendants' argue that the § 1983 counts should be dismissed because plaintiff has failed to allege the requisite cognizable property interest element of a Fourteenth Amendment due process claim. Defendants take the position that plaintiff had no property interest in the pawned items because the Illinois Pawnbroker Regulation Act ("Pawnbroker Act") does not create such a right. Plaintiff, on the other hand, maintains that it had a com-

mon law property interest in the pawned items and that a pawnbroker's property interest in items pledged is expressly recognized in the Pawnbroker Act.

■ The Due Process Clause of the Fourteenth Amendment provides that the states shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. However, there is no loss of property without due process if a state provides an adequate post-deprivation remedy for the loss. *See Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) ("[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available."). Nevertheless, the procedural protections of the Fourteenth Amendment apply to protect a significant property interest, regardless of the ultimate outcome of a hearing on the final entitlement to the possession and ownership of the property. *Fuentes v. Shevin*, 407 U.S. 67, 87, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).

■ Although its true, as defendants' suggest, that the Pawnbroker Act does not create a property interest, the interest is created by the common law and exists independent of the Act. Illinois courts have long recognized pawnbrokers' liens in the property pledged to them as collateral for loans. *See Pease v. Ditto*, 189 Ill. 456, 465, 59 N.E. 983 (1901); *Gen. Motors Acceptance Corp. v. Vaughn*, 358 Ill. 541, 545, 193 N.E. 483 (1934). Obviously, a lien on property is an interest in property within the ambit of the Fourteenth Amendment. *See Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). Moreover, the Pawnbroker Act clearly recognizes that pawn-

brokers have property rights in the property that is pledged or sold to them. *See* 205 ILCS 510/12(b) (referring to "pawnbroker's property rights or interest in the [pawned or purchased] property"). The sections of the Act pertinent to this case are a mechanism for dealing with property in a pawnbroker's possession which law enforcement believes to be stolen. *See id.* at §§ 9 & 12. Under the Pawnbroker Act, if goods pledged or purchased by a pawnbroker are believed to be misappropriated, a law enforcement officer may unilaterally issue a hold order to the pawnbroker requiring it to retain the property and not to return, sell, or otherwise dispose of the property. 205 ILCS 510/12(a). The officer may also require the pawnbroker to release to him the goods subject to a hold order for the purpose of furthering a criminal investigation and prosecution. 205 ILCS 510/12(b). "The release of the property to the custody of the law enforcement officer shall not be considered a waiver or release of the pawnbroker's property rights or interest in the property." *Id.* "Upon completion of the criminal investigation, the property shall be returned to the pawnbroker who consented to its release ... [unless] criminal charges have been filed and the property may be needed as evidence, [and] the prosecuting attorney shall notify the pawnbroker in writing." *Id.* "In cases where criminal charges have been filed ... [t]he pawnbroker shall hold such property until receiving notice of the disposition of the case." *Id.*

■ In this case, plaintiff has pleaded that the welder and chainsaw were placed in pawn by Hunt. According to the allegations in the complaint, there was no hold order issued in this case, the items were not seized for the purpose of furthering a criminal investigation or prosecution, and were not seized to be used as evidence in a criminal prosecution. What is left then is an allegation that defendants deprived plaintiff of its property interest in the welder and chainsaw without due process of law. Therefore, plaintiff has pleaded the requisite cognizable property interest element of a due process claim.

■ Defendants rely on § 9 of the Pawnbroker's Act in support of their position that plaintiff has not pleaded a cognizable property interest in the pawned items. That section states in pertinent part:

When any person is *found* to be the owner of stolen property which has been pawned, such property shall be returned to the owner thereof without the payment of the money advanced by the pawnbroker thereon or any costs or charges of any kind which the pawnbroker may have placed upon the same.

205 ILCS 510/9 (emphasis added). Defendants argue that this provision means that the police may unilaterally find who the owner of the stolen property is and return it to that person. While there is no Illinois case construing this provision of the Pawnbroker Act, the Ninth Circuit, in construing California's analogous pawnbroker statute, has stated that "[t]he police clearly are not authorized by California law to seize property from a pawnbroker for the purpose of returning it to the person who has reported the property stolen." *G & G Jewelry, Inc. v. City of Oakland,* 989 F.2d 1093, 1102 (9th Cir.1993). This statement is in keeping with the rule of law and the same can be said with respect to the Illinois Pawnbroker Act. It is also important to note that § 12(b) provides that the pawnbroker "shall not dispose of the property [subject to a hold order] except pursuant to a court order or the expiration of the holding period," 205 ILCS 510/12(b), in contemplation of a judicial determination of ownership. Therefore, this court concludes that § 9 of the Pawnbroker Act

does not authorize law enforcement officers to unilaterally determine the owner of goods in the possession of a pawnbroker that are believed to misappropriated and then return the goods to that person.

Defendants also take the position that in this case there is no dispute that Rutledge is the owner and that plaintiff has even pleaded facts indicating that Rutledge is the owner. The court disagrees. The allegations in the complaint allege a dispute as to ownership of the items as they include allegations that Rutledge and Hunt were acting in concert to get the pawned items back without repaying the money loaned to Hunt. If those allegations prove to be true, Hunt was acting as Rutledge's agent and pawned the items with his consent.

Additionally, defendants argue that because the Pawnbroker Act satisfies the Fourth Amendment, there is no cognizable property interest pleaded. This argument is misplaced. While it is true that police officers may seize property without a warrant that they have probable cause to believe is stolen if they are lawfully in a place from which they can see such property in plain view, *see Texas v. Brown*, 460 U.S. 730, 737–39, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), plaintiff has not alleged a violation of the Fourth Amendment based on an unlawful seizure. Instead, the allegations are that defendants deprived plaintiff of property without due process of law in violation of the Fourteenth Amendment by taking the pawned items and returning them to Rutledge without notice, a hearing, and a judicial determination of ownership.

 While the court rejects defendants' contention that plaintiff has failed to state a claim upon which relief may be granted based on its failure to properly allege a cognizable property interest, plaintiff has nevertheless failed to state due process claims because it has not alleged the absence of a meaningful post-deprivation remedy. In *Hudson*, the Court stated that a deprivation without authorization, "does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." 468 U.S. at 533, 104 S.Ct. 3194. Thus, deprivations resulting from "random and unauthorized" acts of local government actors do not constitute procedural due process violations as long as a meaningful post-deprivation remedy is available. *See id.* Consequently, where random and unauthorized acts are alleged, plaintiff also "must allege the inadequacy or unfairness of post-deprivation procedures in order to state a due process violation." *Leavell v. Ill. Dep't of Natural Res.*, 600 F.3d 798, 806 (7th Cir.2010). In this case, plaintiff has not alleged the inadequacy or unfairness of state court post-deprivation remedies. On the contrary, plaintiff has alleged a state law claim for conversion against Deputy Imrie, thereby asserting the availability of such a remedy. Moreover, it is possible that such a claim could lie against the other defendants, and perhaps a breach of contract action against Hunt would also provide a remedy. Thus, plaintiff's federal due process claims are dismissed for failure to state a claim upon which relief may be granted.

 Even if plaintiff had adequately stated federal due process claims, the claims are dismissed on the additional ground of qualified immunity. The doctrine of qualified immunity insulates government actors from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have been aware. *Siliven v. Ind. Dep't of Child Servs.*, 635 F.3d 921, 925–26 (7th Cir.2011). "In other words, the doc-

trine protects public officials who act in ways they reasonably believe to be lawful, and thus leaves ample room for mistaken judgments." *Id.* at 925 (quotation marks omitted). In essence, qualified immunity protects all but the "plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant,* 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (quotation marks omitted).

■ The deputies returned the pawned items to Rutledge after consulting with Assistant State's Attorney Lopiccolo, and did so at his direction. Officers are generally entitled to rely on a prosecutor's advice and are not required to second guess their legal judgment such that officers are entitled to qualified immunity for actions performed at the prosecutor's direction. *See Fleming v. Livingston Cnty., Ill.,* 674 F.3d 874, 881 (7th Cir.2012) ("[C]onsulting a prosecutor may not give an officer absolute immunity from being sued ... but it goes far to establish qualified immunity...."). Under the allegations in the complaint, Sheriff Wirth enjoys the same immunity because the claims against him are based on transferring the items "by and through his employees." [2] Moreover, while the constitutional right to procedural due process prior to governmental deprivation of property was clearly established in October 2012, it was not clearly established whether the Pawnbroker Act satisfied due process and allowed officers to return stolen property to the individual they believed owned the property. After all, prior to this one, there were no cases construing the term "found" as used in § 9 of the Pawnbroker Act, and therefore the court cannot say that the law was clearly established such that the Deputies were not permitted to make the finding and return the property to the person they believed to be the owner. Furthermore, due to the fast-paced business of law enforcement, Lopiccolo may have been put on the spot to resolve the deputies' legal issue quickly and made a judgment call that this court cannot say was "plainly incompetent." This is especially true considering the fact that defense counsel in this case, who has been afforded ample time to contemplate the issue, continues to maintain that the Pawnbroker Act authorized the deputies to return the pawned items to Rutledge. Thus, the court concludes that the law was not clearly established on the relevant date to make the unlawfulness of Lopiccolo's directive apparent. Consequently, defendants are entitled to qualified immunity and plaintiff's federal due process claims are dismissed on this ground as well.[3]

Defendants also argue that the plaintiff's state law claims should be dismissed construing them as private rights of action under the Pawnbroker Act. Counts XII and XIV are clearly claims for the tort of conversion. Defendants make no argument as to the viability of Counts XIII and XIV as conversion claims. Nevertheless, although "supplemental jurisdiction persists even if all the claims giving rise to original jurisdiction have been dismissed,"

2. These claims also fail because there is no respondeat superior liability under § 1983. *See Milestone v. City of Monroe, Wis.,* 665 F.3d 774, 780 (7th Cir.2011). In his opposition to the motion to dismiss, plaintiff intimates that he has pleaded official capacity *Monell* claims against Sheriff Wirth but Counts X–XII repeatedly allege that Wirth acted "by and through his employees," and do not include an allegation that a policy, practice or custom was the moving force behind plaintiff's alleged constitutional injury. *See City of Canton v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

3. Defendants also maintain that Lopiccolo is entitled to absolute immunity for his prosecutorial decision not to prosecute Hunt. This would likely be true but this court does not find such a claim alleged against Lopiccolo in the complaint.

910

the general rule is that "when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Miller v. Herman,* 600 F.3d 726, 738 (7th Cir.2010); *see also* 28 U.S.C. § 1367(c). Here, the court exercises its discretion and declines to consider plaintiff's claims that are premised on state law. Accordingly, Counts XIII and XIV are dismissed without prejudice to pursuing those claims in state court.

### III. CONCLUSION

For these reasons, defendants' motion to dismiss is granted in part and denied in part. Plaintiff's federal claims are dismissed with prejudice for failure to state a claim upon which relief can be granted and on qualified immunity grounds. The court expresses no opinion as to the merit of plaintiff's state law claims and they are remanded, pursuant to 28 U.S.C. § 1447(c), to the Circuit Court of the Seventeenth Judicial Circuit, Winnebago County, Illinois.